Michael C. CRAVATT, Petitioner,

v.

Lieutenant THOMAS and Warden Fenton, Respondents.

David C. BOSWELL, Petitioner,

v.

Charles F. FENTON, Respondent.

Albert E. SMITH, Petitioner,

v.

Charles FENTON et al., Respondents.

David M. SHOUP, Petitioner,

v.

UNITED STATES of America and Charles E. Fenton, Warden, F. C. I., Oxford, Wisconsin, Respondents.

Ira James MURRAY, Petitioner,

v.

Charles E. FENTON et al., Warden, Federal Correctional Institution, Oxford, Wisconsin, Respondent.

Nos. 74–C–235, 74–C–427, 74–C–443, 75–C–38 and 75–C–39.

United States District Court, W. D. Wisconsin.

Aug. 22, 1975.

David C. Mebane, U. S. Atty., Warren W. Wood, Asst. U. S. Atty., Madison, Wis.

Gretchen T. Vetzner, Madison, Wis., for petitioner, David C. Boswell, for respondents.

Mark A. Frankel, Madison, Wis., for petitioner, Albert E. Smith.

Michael C. Cravatt, pro se.

David Boswell, pro se.

Albert E. Smith, pro se.

David M. Shoup, pro se.

Ira James Murray, pro se.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

These are petitions for writs of habeas corpus by inmates confined at the Federal Correctional Institution at Oxford, Wisconsin, in this district. In each proceeding, the respondent or respondents have opposed the petition on the ground, among others, that the petitioner has failed to exhaust his administrative remedies. I have consolidated these petitions for the purpose of addressing this single issue common to each. The status of each case with respect to this issue is as follows:

### 74-C-235

Petitioner Cravatt alleges that he is presently confined at the Federal Correctional Institution at Oxford; that he was chained to his bed and handcuffed; that the handcuffs cut his hands and wrists; that the chain went around the bed so that when he fell off the bed he was caught in the chain; and that he was not allowed to get up to use the toilet. Petitioner prays that his sentence be vacated or reduced to time served, and that he be awarded five hundred thousand dollars in damages. The respondents are Charles Fenton, the warden, and Alvin Thomas, a correctional supervisor. Respondent's motion to

dismiss, and an affidavit filed in support of it, allege that petitioner has failed to' exhaust administrative remedies. In his brief in opposition to the motion to dismiss, petitioner alleges that his complaint herein was filed prior to the time formal grievance procedures were provided for at Oxford. No procedure has yet been initiated by the court for factual inquiry into the question of exhaustion of administrative remedies in this case.[1]

### 74–C–427

In his petitition dated September 25, 1974, petitioner Boswell alleges that he is presently confined at the Federal Correctional Institution at Oxford; that respondent Fenton has failed and is failing to provide adequate protection for petitioner against assaults and rapes; and that respondent Fenton has conspired with others to keep petitioner in a constant state of fear and anguish. Petitioner requests immediate release from imprisonment and twenty-five thousand dollars in damages.

Respondent's motion to dismiss is supported by an affidavit alleging that petitioner has not filed a complaint within the formal grievance procedures established by the Bureau of Prisons. In a document entitled a "motion for summary judgment," apparently intended to be considered in opposition to the government's motion to dismiss, petitioner alleges that he has attempted to exhaust his administrative remedies within the Bureau. In support of this contention, he submits four letters from officials of the United States Bureau of Prisons, one to petitioner dated September 4, 1974, one to Senator Edward Kennedy dated November 1, 1974, one to Congressman Joe Evins dated September 13, 1974, and one to United States Senator Bill Brock dated September 3, 1974, all to the effect that the Bureau of Prisons'

officials have reviewed petitioner Boswell's situation and believe that a transfer to another federal facility, requested by petitioner, is not called for. No provision has yet been made by this court for further factual inquiry into the question of exhaustion of administrative remedies in the case.

### 74–C–443

Petitioner Smith alleges that prior to September 15, 1974, he was incarcerated at the Lorton Reformatory in Virginia; that on September 15, 1974, he was transferred to the Federal Correctional Institution at Oxford; that he has suffered numerous deprivations as a result of that transfer; and that prior to that transfer, he was not accorded the procedural protections required by the due process clause of the Fifth Amendment. Petitioner requests release from imprisonment or, in the alternative, a return to Lorton Reformatory. Respondent's motion to dismiss the original petition, which I will treat as a motion to dismiss the amended petition as well, is supported by an affidavit alleging that petitioner has not filed a complaint within the formal grievance procedures established by the Bureau of Prisons. No provision has yet been made by the court for factual inquiry into the question of exhaustion of administrative remedies in the case. However, petitioner appears to concede that he has not pursued such remedies.

### 75–C–38

Petitioner Shoup alleges that he is presently confined in the Federal Correctional Institution at Oxford; that he has not received adequate medical treatment for nerve damage in his eye; and that respondent Fenton "via his administrative staff" has conspired to keep him in mental anguish. Petitioner requests release from imprisonment and

---

1. It will be noted that although the initial pleadings in these cases are denominated as petitions for habeas corpus, respondents have sometimes served and filed motions to dismiss rather than "responses," and petitioners have sometimes served and filed briefs and affidavits in opposition to motions to dismiss rather than "traverses." For the purposes of this opinion, I ignore these variations in form.

damages of one hundred thousand dollars. Accompanying the respondent's response is an affidavit alleging that petitioner has not filed a complaint within the formal grievance procedures established by the Bureau of Prisons. Also accompanying said response is a copy of a letter from the petitioner to Warden Fenton, dated subsequent to the commencement of this proceeding, informing the respondent of the reasons the proceeding was commenced. No provision has yet been made by the court for factual inquiry into the question of exhaustion of administrative remedies in the case. However, petitioner appears to concede that he has not pursued such remedies.

### 74-C-39

Petitioner Murray alleges that he is presently confined at the Correctional Institution at Oxford; that on April 6, 1974, he was attacked by an inmate with a cue stick and kicked in the face by another inmate; that as a result of this incident, he was seriously injured; that respondent Fenton and his staff have generally failed to adequately protect petitioner from attacks, assaults, and sexual threats; and that respondent Fenton and his staff have conspired to keep petitioner in constant fear. Petitioner requests release from imprisonment and monetary damages of one hundred thousand dollars. Respondent's response is accompanied by an affidavit alleging that petitioner has not filed a complaint within the formal grievance procedure established by the Bureau of Prisons. No provision has yet been made by the court for factual inquiry into the question of exhaustion of administrative remedies in the case. However, petitioner appears to concede that he has not pursued such remedies.

Policy statement 2001.6A of the Bureau of Prisons, promulgated October 18, 1974, ". . . authorizes procedures by which offenders may seek

formal review of complaints which relate to their imprisonment if informal procedures have not resolved the matter." The salient provisions of the statement are as follows: (1) A prisoner who cannot resolve his complaint informally writes his complaint on a complaint form and files it with the institution's staff. The institutional staff is to supply a signed written response within fifteen days. (2) If the prisoner is not satisfied with the institution's response, or if he does not wish to file with the institution initially, he can file a written complaint with the Regional Director. The director shall respond in writing within twenty days. (3) Finally, a written appeal may be made to the Assistant Director, Office of General Counsel and Review, Bureau of Prisons. A written reply is to be made in twenty days. There is no provision for a hearing to which witnesses might be called or even for a factual inquiry by means of affidavits; nor is there any provision for administrative findings of fact. No provision is made for the development of an administrative record, other than the prisoner's written complaint and the administrators' response. Presumably, a conscientious response to a complaint would require inquiries to be made by the administrators, but the nature of these inquiries, the identities of the persons to whom inquiries are made, and the statements given in response to the inquiries are not parts of any record required by the Policy Statement, except as they may be reflected in the administrators' response to the complaint.

### Jurisdiction

■ I consider first the source and scope of this court's power to decide these actions. Each of these petitions seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. With the exception of the petitioner in 74-C-443,[2] each petitioner clearly requests immediate re-

---

2. In 74-C-443, petitioner requests a discharge from custody, or in the alternative, a return to the prison from which he claims to have been illegally transferred.

lease from every aspect of continued physical imprisonment. Petitioners are contending that they may not lawfully be physically imprisoned in any manner.[3] 28 U.S.C. § 2241(c)(3) states: "The writ of habeas corpus shall not extend to a prisoner unless he is in custody in violation of the Constitution or laws or treaties of the United States." To be entitled to a writ of habeas corpus releasing them from all forms of physical imprisonment, then, the petitioners must prove that it is illegal under the Constitution, or laws, or treaties of the United States for the respondents to continue physically to imprison the petitioners in any manner.

■ The United States contends that each of the petitioners in 74–C–235, 74–C–427, 75–C–38, and 75–C–39 is physically imprisoned lawfully pursuant to a judgment of conviction and commitment of a federal court, and it has submitted affidavits to that effect. None of the petitioners questions the fact that he was sentenced by a specific court for a specific term of physical imprisonment, and none questions the lawfulness of the judicial proceedings underlying the imposition of the sentence;[4] rather, each petition challenges the constitutionality of specific conditions under which the petitioner has been or is being physically imprisoned. But the

unconstitutionality of a particular aspect does not render unconstitutional every other aspect of one's physical imprisonment. Having failed to allege grounds upon which I could find it is illegal to impose any degree or form of physical imprisonment upon them, the petitioners are not entitled to the remedy of release from every aspect of physical imprisonment, and the request for such release in petitions 74–C–235, 74–C–427, 75–C–38, and 75–C–39, must be denied.

■ I now construe the petitions in 74–C–235, 74–C–427, 75–C–38, and 75–C–39, along with that in 75–C–443, as requesting release from those specific conditions of physical imprisonment which each alleges to be unconstitutional. Although a prisoner may not have grounds for release from every aspect of physical imprisonment, a release from an unconstitutional specific condition of physical imprisonment is a remedy to which a prisoner is entitled. However, it might be argued that habeas corpus is not an appropriate procedure by which to seek such relief. Until relatively recently "the courts have typically claimed that habeas is not an appropriate vehicle for the review of conditions of confinement established by prison management,"[5] apparently on the theory that habeas corpus was available

---

3. Challenging, as they do, the "fact or duration" of "physical imprisonment," petitioners in 74–C–235, 74–C–427, 75–C–38, and 75–C–39 probably are obliged to raise their claims for release under the habeas corpus head of jurisdiction. *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Although *Preiser* involved the issue whether federal remedies alternative to habeas corpus were available to state prisoners attacking the fact or duration of their physical imprisonment, and although the issue at the heart of *Preiser*—the applicability of the "exhaustion of state remedies" requirement of 28 U.S.C. § 2254—does not arise in the context of suits by federal prisoners, *Preiser* was largely bottomed on an analysis of the historical function of habeas corpus, an analysis as relevant to a determination of the proper relationship among federal remedies available to federal prisoners as it was to the federal remedies open to those physically imprisoned

by the states. See 411 U.S. at 484–489, 93 S.Ct. 1827. The lesson of *Preiser*, that ". . . the specific federal habeas corpus statute, explicitly and historically designed to provide the means for a prisoner . . . to attack the validity of his confinement, must be understood to be the exclusive remedy available in a situation like this. . . .," (411 U.S. at 489, 93 S.Ct. at 1836), can therefore be applied to the cases at hand.

4. If the petitioners did seek to challenge the validity of the court judgments in their cases, they would be required to demonstrate that they had complied with 28 U.S.C. § 2255, which dictates the procedures to be used in seeking post-conviction relief from federal court convictions.

5. Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1081 (1970) (hereinafter cited as Developments—Federal Habeas Corpus).

only in cases where issuance of the writ would result in an immediate discharge of the petitioner from every aspect of physical imprisonment. *McNally v. Hill*, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). That rule has gradually been eroded,[6] and in *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the Court appeared to agree that ". . . a custody, one component of which is . . . an unawful regulation, is an invalid custody,"[7] amenable to challenge by means of a habeas corpus petition. I, therefore, find that 28 U.S.C. § 2241 can serve as the jurisdictional basis for an attack by a federal prisoner on the legality of a specific condition of his physical imprisonment, although the issuance of a writ of habeas corpus in such a case would result only in the elimination of that specific condition of physical imprisonment and not in his release from every aspect of physical imprisonment.[8]

Although an expanded meaning has been given the phrase "discharge from custody" in the traditional rule that ". . . habeas corpus is available only to effect petitioner's discharge from custody,"[9] nevertheless a petition for habeas corpus cannot win any relief beyond "discharge from custody." Habeas corpus remains an inappropriate procedure for requesting relief for injuries which the petitioner has suffered from acts completed prior to the time the petition is filed in court.[10]

Accordingly, damages are not available in a habeas corpus petition. *Preiser v. Rodriguez*, 411 U.S. 475, 493, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Consequently, the claims for monetary damages in 74–C–235, 74–C–427, 75–C–38, and 75–C–39 must be denied. Furthermore, the petition in 74–C–235, unlike those in the other actions, contains no allegation that the allegedly unconstitutional specific conditions of physical imprisonment under which the petitioner was held remained in force at the time the petition was filed. If the petitioner were to prove the allegations of his petition, the only appropriate remedy would be monetary damages, a remedy not available under 28 U.S.C. § 2241. The petitioner's petition in 74–C–235 must, therefore, be denied.

### Ripeness

The principal issue to which this opinion and order are directed, *i. e.*, whether

---

6. See *e. g.*, *Creek v. Stone*, 126 U.S.App.D.C. 329, 379 F.2d 106, 109 (1967).

7. Developments—Federal Habeas Corpus, *supra*, at n. 3, at 1083. In *Johnson*, a prisoner challenged the constitutionality of being placed in solitary confinement for assisting other prisoners in filing legal petitions. The district court issued the writ, and the Supreme Court upheld its decision, though the granting of the writ resulted only in a release from solitary confinement, rather than from every aspect of physical imprisonment.

8. In a case where the relief requested is a change in a specific condition of physical imprisonment, rather than release from every aspect of physical imprisonment, habeas corpus is not the sole head of jurisdiction available to plaintiff. Jurisdiction is possible under 28 U.S.C. § 1331, provided the amount in controversy is present. Whether jurisdiction is also available under other statutes, e. g., 28 U.S.C. § 1361 or the Administrative Procedure Act (5 U.S.C. § 701 *et seq.*), is a question I need not confront. See, Turner, *Federal Jurisdiction and Practice in*

*Prisoner Cases*, in Hermann and Haft, Prisoner Rights Sourcebook, 243–252 (1973).

9. Developments—Federal Habeas Corpus, *supra*, at n. 3, at 1079.

10. Cases such as *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) and *Carafas v. Lavallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), are not to the contrary. In each case, the claim of invalidity was directed to the court judgment from which had sprung the physical imprisonment or the parole restraint or the disability imposed upon convicted persons. In *Jones*, the petitioner was physically imprisoned as of the time the petition was filed in the district court, and parole restraints were actually being imposed upon him during the period of the appellate proceedings. In *Carafas*, the petitioner was physically confined at the time he filed his petition in the district court. It was held that the jurisdiction then present was not extinguished by reason of the fact that petitioner's sentence expired altogether during the time-consuming appellate process.

the petitioners are required to exhaust their administrative remedies, is an issue of timing: May a civil action by a federal prisoner be entertained by a federal court prior to the time that the prisoner has presented his or her grievance to federal prison officials, via an established grievance procedure? The doctrine of exhaustion, however, is not the only body of federal law concerned with defining the time at which a court adjudication of a federal claim will be deemed permissible or appropriate; the doctrine of ripeness reflects the same concern. Consequently, although these two doctrines are quite distinct, there are cases in which the application of one prompts an inquiry similar to that prompted by application of the other.

The likelihood that the application of the distinct doctrines of ripeness and of exhaustion to these federal prisoners' cases will prompt similar factual inquiries is particularly great. The warden at Oxford is a named respondent in each petition. The existence of an actual dispute between the named parties to a lawsuit is generally relevant to a ripeness inquiry, though, for reasons stated below, not necessarily determinative of that inquiry. Whether the warden at Oxford has considered and passed on the merits of these petitioners' grievances could therefore conceivably affect a decision whether they are ripe for court adjudication. On the other hand, the administrative grievance procedure has as its first stage a presentation of the grievance to the institutional staff at Oxford (which may mean the warden himself). If not adequately explained, a decision to dismiss a particular federal prisoner's case for failure to present the grievance to the warden could be thought to reflect any one of several judgments: that the case was not ripe; or that administrative remedies have not been exhausted; or both.[11]

The precedential implications of decisions founded on ripeness considerations may be quite different from those founded on the exhaustion doctrine. At least to some extent, the requirement of ripeness is constitutionally mandated by the "case or controversy" requirement of Article III. The requirement of exhaustion is without constitutional root, a product of either legislative directive or judicial discretion. A failure to delineate explicitly between the two doctrines may result in the elevation to apparent constitutional status of a decision based only on public policy, or alternatively may result in the mistaken suggestion that matters of constitutional import lie within the reach of legislative or judicial discretion. For this reason it is necessary to determine initially whether each of these petitions is sufficiently ripe for court adjudication, before making a separate inquiry whether exhaustion of administrative remedies will be required.

The basic principle of ripeness is said to be that: "Judicial machinery should be conserved for problems which are

---

11. The potential for confusion of the exhaustion and ripeness doctrines is illustrated by *Soyka v. Alldredge*, 481 F.2d 303 (3rd Cir. 1973). In that case, the court denied a habeas corpus petition, ruling it premature, and stating that the petitioner must ". . . exhaust the administrative means at his disposal before judicial review will be appropriate." 481 F.2d at 306. On closer examination, it appears that the dismissal was predicated on ripeness grounds, and did not necessarily represent an application of the exhaustion doctrine. The petitioner sought a reduction of sentence based on presentence jail time he had served. The court found that the power to grant such credit was vested by statute in the Attorney General. While a local prison official had refused the petitioner's request for credit, neither the Central Office of the Bureau of Prisons nor the Attorney General had ruled on that request. The court found ". . . no circumstances present which suggest that the Attorney General will fail to perform his duty and grant credit where it is warranted." *Ibid.* The court thus held not that a petitioner must first present an otherwise valid legal claim through administrative procedures, but rather that the presentation of the claim to the official empowered to act upon it was necessary to establish the existence of a cognizable cause of action.

real and present or imminent, not squandered on problems which are abstract or hypothetical or remote." 4 Davis, Administrative Law, § 21.01 (1958). It has been said that a case is not justiciable where ". . . there is no real controversy between the parties," [12] and that the ". . . federal courts have no power under the Constitution unless issues have crystallized between two parties who are opposing each other." [13]

The questions arise whether in the habeas corpus context: (1) the issues must have "crystallized" before relief can be sought from a court; and (2) the parties named in the petition for habeas corpus must be the parties between whom the issues have crystallized, that is, the true adversaries.

█ The issues must have crystallized. "The principle applies to all work of the courts." Davis, *supra*, § 2101. The conservation of judicial time and energy is a consideration quite as applicable to habeas corpus cases as to other kinds of litigation. I hold that a petition for writ of habeas corpus challenging a specific condition of physical imprisonment is ripe and justiciable in a court only if at the time the petition is filed, the specific condition is actually being imposed upon the petitioner and if either of the following conditions are met: (1) the petition shows that the person or persons responsible for the imposition of the challenged condition are aware of the condition and have failed or refused to remove or modify it, or (2) the petition shows that petitioner's attempts to make its existence known to the person or persons responsible for the imposition of the condition have been thwarted.

█ However, I believe that habeas corpus proceedings represent an exception to the general requirement that the parties named in the initial pleading be the parties between whom the issues have crystallized. This is because of a legal convention, having its roots in history, that the named respondent must be the person possessing the power physically to produce in court the body of the petitioner.[14] In most habeas corpus proceedings, this means the warden. Clearly, there are many sets of circumstances in which the warden is not the petitioner's true adversary with respect to the crystallized issues. An example is a challenge by a petitioner to the validity of the court sentence pursuant to which he or she is imprisoned. With respect to federal prisoners, this case has been rescued from the awkward conventions of habeas corpus and is dealt with more forthrightly under 28 U.S.C. § 2255 in a proceeding to which the warden is not a party. Unfortunately, similarly forthright procedures have not yet been provided in other cases initiated by persons who are physically imprisoned. In a case brought to the federal courts by a state prisoner challenging the validity of a state court sentence, the respondent is a warden who played no part in the challenged proceedings in the state court. This is true as well of a petition for habeas corpus challenging the legality of an order by a parole board revoking parole and returning petitioner to physical imprisonment. Even with respect to the legality of the imposition of a specific condition of physical imprisonment, once physical imprisonment has been decreed by a court or a parole board, the warden may or may not be the petitioner's true adversary. The challenged condition may have been imposed by subordinates who have acted without the knowledge or consent of the warden. Also, although the warden may be responsible for the imposition of a certain challenged condition upon the petitioner, the warden's action may be required by a policy deci-

---

12. *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 151, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, concurring).

13. Davis, *supra*, § 21.01.

14. See R Sokol, Federal Habeas Corpus (1969) pp. 1–37, 80–84.

sion promulgated by the warden's superiors, which the warden is powerless to change and with which the warden may disagree. Therefore, I believe that a habeas corpus petition may proceed if it meets the test of ripeness stated in the preceding paragraph of this opinion whether or not the named respondent warden is the person who is actually imposing the condition, whether or not the respondent warden is the person who has made the policy decision which requires the imposition, and whether or not the warden is the person who has actual or constructive knowledge that the imposition is occurring. In a given case the respondent warden, who possesses the power physically to produce in court the body of the petitioner, may also be the person who is the petitioner's true adversary with respect to the challenged condition of physical imprisonment, but this fortuitous circumstance need not be present to permit petitioner to proceed in court.[15]

Construed most favorably to the petitioners, the petition in 74–C–427 and that in 75–C–39 allege that the challenged condition of physical imprisonment is presently being imposed upon the petitioner, namely, a physical setting and an internal institutional routine in which the petitioner is being subjected to assaults, and that the respondent warden has conspired to keep the petitioner within this set of circumstances. In 74–C–427, the response is in the form of a motion to dismiss for failure to exhaust administrative remedies or, in the alternative, a motion for an order requiring a more definite statement. In 75–C–39, the response admits that petitioner was assaulted by another inmate on a certain occasion, but it denies that respondent or his staff had had any warning that the assault might occur and it denies any failure to provide protection to petitioner generally against assaults. While reasonably specific about certain occasions on which petitioners have suffered assault, each petitioner is vague about the manner in which respondent warden has conspired to keep petitioner generally and continuously within a set of circumstances in which petitioner is subject to assaults. However, for the purpose of dealing with the question of ripeness, and for that purpose alone, I will assume that each petition is sufficiently definite. Also, it appears that in neither case is the record sufficient to permit me presently "summarily [to] determine the facts" relevant to ripeness. 28 U.S. C. § 2243. In this circumstance, and with respect to the question of ripeness only, I conclude that I should presently look only to each petition, construed most favorably to the petitioner, and that each petition makes a showing that the respondent warden is responsible for the imposition of the challenged set of conditions, that he is aware of them, and that he has failed or refused to remove or to modify this set of conditions.[16] This is a sufficient allegation of ripeness.

There is no allegation in the amended petition in 74–C–443 that at the time it was filed, any of the named respondents at Oxford was aware of the condition complained of, namely, that the

15. As the availability of habeas corpus as a vehicle to challenge specific conditions of confinement expands (footnotes 5–7, *supra*), some of the resulting procedural anomalies have yet to be clearly perceived and dealt with, whether legislatively or judicially or by rule-making. Perhaps courts would now be prepared to hold that in certain habeas corpus proceedings, it is no longer necessary to name as respondent the person who possesses the power physically to produce in court the body of the petitioner, and that it is now permissible or even necessary to name as respondent the true adversary of the petitioner on the issue raised. However, I assume the continuing vitality of the venerable rule.

16. In the course of further proceedings in all of these cases, it will be necessary to determine whether a procedure can be formulated by which the facts relevant to ripeness can be determined separately from and prior to factual determination of the merits of the petitions.

petitioner was given no statement of reasons for his transfer to Oxford from his previous place of physical imprisonment, and no opportunity to be heard on whether he should be transferred. Nor is there any allegation that any of the respondents was responsible for the transfer. However, it sufficiently appears from the petition that at the time it was filed, petitioner was being confined in the facility to which he had been transferred in the manner alleged, and that the persons responsible for the transfer must have been aware that no statement of reasons for the transfer and no opportunity to be heard on the transfer had been afforded petitioner. No response to the amended petition has been ordered as yet; respondent moved to dismiss the original petition, and I have decided to treat that motion as a motion to dismiss the amended petition as well. The present record is insufficient to permit me summarily to determine the facts relevant to ripeness. With the record in this state, and for reasons explained above, although the named respondents are not the petitioner's true adversaries with respect to the procedures observed at Lorton prior to the transfer, there is a sufficient allegation of ripeness.

 In 75–C–38, the petition which names only the United States and the warden as respondents alleges: (1) that the respondent warden "via his administrative staff, and the medical department, Dr. A. R. Weihe, have failed to provide medical treatment for nerve damage in petitioner's right eye;" and (2) that the respondent warden "via his administrative staff, have conspired and combined together to keep this petitioner in constant states of mental anguish." Whether (2) is too vague is a question I do not now decide, but assuming that it is not fatally vague, it states a claim which is ripe and justiciable; it sufficiently alleges that as of the time the petition was filed, the respondent warden and members of his administrative staff were consciously and chronically imposing upon petitioner certain unlawful conditions of physical imprisonment. Claim (1) is specific enough about the nature of the petitioner's physical problem, namely, nerve damage to his right eye. The word "failed" is troublesome. If a petition alleged the existence of a medical problem and an absence of medical treatment but did not allege that anyone responsible for providing medical treatment was aware of the problem, no ripe claim would be presented. However, construing the petition most liberally to the petitioner, I conclude that the word "failed" reasonably implies that the warden "via his administrative staff, and the medical department, Dr. A. R. Weihe," had been made aware of petitioner's need for medical treatment and had failed then to provide it. If I were to look to the petition, I would conclude that this claim was ripe. However, the response alleges that several days after his petition for habeas corpus had been filed in this court, petitioner addressed a letter to the warden, in which petitioner stated that Dr. Weihe was aware of petitioner's eye problem, but in which petitioner also stated that the warden had been named as a respondent only because petitioner had been informed that it was necessary to name him in this kind of a case; the response also alleges that prior to the filing of the petition in this court, Dr. Weihe, chief of health programs at the institution, was aware of the petitioner's complaint about his eye. None of these allegations in the response is controverted in a subsequent "brief" filed by petitioner, which I will treat as a traverse. I give effect to the allegations of the petition not controverted by the response and to the allegations of the response not controverted by the traverse, and summarily determine as fact: that at the time the petition was filed, the respondent warden was unaware of petitioner's eye problem or of the nature of the medical treatment given or not given the petitioner, and that the petitioner had made no attempt to make these matters known

**968**

to him; and (2) that at the time the petition was filed, Dr. Weihe was chief of health programs at the institution, was aware of petitioner's eye problem and was responsible for the medical treatment actually given or not given the petitioner. For reasons explained above, I conclude that although only the warden and not Dr. Weihe is named as respondent, the facts as to Dr. Weihe are sufficient to meet the requirement of ripeness or justiciability.

### Exhaustion of Administrative Remedies

Though the federal courts have frequently referred to a rule ". . . that judicial relief must be denied until administrative remedies have been exhausted," existing case law does not support such a flat statement. "The law embodied in the holdings clearly is that sometimes exhaustion is required and sometimes not." Davis, *supra*, § 20.01. The doctrine of exhaustion ". . . is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). I have decided earlier that jurisdiction is present in 74–C–427, 74–C–443, 75–C–38, and 75–C–39, and that none is presently vulnerable to dismissal for lack of ripeness. I begin with a presumption that they now should proceed to decision in this court. I should proceed with them unless I find that one or more public interests would be sufficiently furthered by the

imposition of an exhaustion requirement.[17]

■ The requirement of exhaustion of administrative remedies is most commonly applied in ". . . cases where the relevant statute provides that certain administrative procedures shall be exclusive." *McKart v. United States, supra*, at 395 U.S. 193, 89 S.Ct. at 1662. For example, non-prisoner plaintiffs and prisoner-plaintiffs generally are required to exhaust their administrative remedies prior to filing suit under the Federal Torts Claims Act. 28 U.S.C. §§ 1346(b) and 2671 *et seq*. That exhaustion requirement results from an explicit legislative directive. 28 U.S.C. § 2675. No such statutory provision governs challenges to the actions or decisions of federal prison officials in imposing specific conditions of confinement. In the absence of a statutory requirement, the applicability of the exhaustion doctrine to a particular case is within the court's discretion. *United States ex rel. Marerro v. Warden, Lewisburg Penitentiary*, 483 F.2d 656 (3rd Cir. 1973).

■ Even though the Congress may not have required expressly that a particular administrative remedy be exhausted prior to judicial review of agency action, Congressional creation of a given administrative procedure may imply a Congressional desire for judicial deference to that procedure. For example, Congress has expressly authorized establishment of an administrative remedy for work-related injuries suffered by prisoners, 18 U.S.C. § 4126, and it appears that a prisoner seeking compensation for such an injury is required to exhaust the administrative remedies detailed in 28 C.F.R. §§ 301.1–301.18 prior

---

17. Respondents in these cases appear to argue that this court should require exhaustion for the reason that utilization of administrative grievance procedures is in a prisoner's own best interest because time is saved in getting to the heart of the matter. Some courts appear to have accepted this contention. See, *e. g. Willis v. Ciccone*, 506 F.2d 1011 (8th Cir. 1974). It seems clear that the Bureau

of Prisons has been wise to create the administrative grievance procedure, and it may well be that a prisoner would be wise to resort to it initially. But if a prisoner desires immediate access to the courts and is otherwise entitled to it, I cannot see how it can be denied because the correctional officials or the courts consider it better for the prisoner to deny it.

to seeking judicial review of that claim. See, *e.g., United States v. Demko,* 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966); *Thompson v. United States, Federal Prison Industries,* 492 F.2d 1082 (5th Cir. 1974). Respondents have not presented, nor have I discovered, similar legislative authorization for the administrative grievance procedures at issue here. I do not suggest that the Bureau of Prisons is powerless to establish an administrative grievance procedure absent specific legislative authorization. I find merely that to the degree that specific legislative authorization is a factor favoring the imposition of an exhaustion requirement, that factor is not present here.

The Administrative Procedure Act (A.P.A.), of course, represents Congress' major effort to regulate judicial review of administrative action. Under the terms of the A.P.A., when any statute provides for court " . . . adjudication . . . to be determined on the record after opportunity for an agency hearing," it will be considered that the agency is required to observe a number of procedures specified in the A.P.A. (5 U.S.C. § 554). These include requirements that: (a) parties to a hearing be granted notice of the matters to be considered (5 U.S.C. § 554(b)); (b) no aspect of the proceeding be conducted *ex parte,* and the hearing examined be free of supervision by any persons engaged in the performance of investigative or prosecuting functions for the agency (5 U.S.C. § 554(c) and (d)); (c) parties be granted a right to counsel and the power to subpoena evidence and witnesses (5 U.S.C. § 555(d)); and (d) hearings be fully transcribed. Accordingly, many statutes requiring parties to exhaust their administrative remedies (*e. g.,* the Social Security Act, 42 U.S.C. § 405), when considered in conjunction with the A.P.A., assure those parties

extensive procedural safeguards within the administrative proceedings, and also assure that the work of the courts, if they are ultimately called upon to perform it, will be facilitated by the spadework done administratively.

■ A decision to require a party to seek a remedy through administrative procedures before resort to the courts should not be made without a careful analysis of those administrative procedures. The more closely the particular administrative procedures resemble court procedures, the more forceful the argument that postponing access to the courts does no injustice to the aggrieved party. That a particular set of administrative procedures is subject to, and in conformity with, the provisions of the A.P.A. cuts in favor of an exhaustion requirement. The inmate grievance procedures at issue here seem clearly not to conform with the dictates of the A.P.A. For example, the initial arbiter of inmate grievances is the institutional staff, including the warden, who are frequently party to the dispute giving rise to the grievance, as these present cases reveal.[18] Much of the law relating to the exhaustion requirement has been developed in the context of administrative procedures much more substantial than 2001.6A. Law developed in such a context is of little significance in the present cases. I do not believe that a court should yield too readily to a desire to be spared additions to its caseload. The respondents here should be required to make a showing of particularized need that each individual petitioner before me should be required to exhaust the 2001.6A procedures.

Four policies are generally cited as justifications for the requirement that administrative remedies be exhausted: (1) subsequent judicial review will be facilitated by allowing an agency to exercise its particular expertise in a given

---

18. I note that if the administrative grievance procedures herein at issue were to conform with the provisions of the A.P.A., the examiners hired to conduct hearings would func-

tion independently of the control of the Attorney General and of those in the Bureau of Prisons to whom the Attorney General delegates authority. 28 U.S.C. §§ 509–510.

area; (2) exhaustion allows an agency to develop a factual record which can be reviewed in subsequent judicial proceedings; (3) an agency should be given an opportunity to correct its own errors; (4) judicial time may be conserved because the agency may grant the relief requested. *McKart v. United States, supra,* 395 U.S. at 194–195, 89 S.Ct. 1657; *United States ex rel. Marrero v. Warden, Lewisburg Penitentiary, supra,* 483 F.2d at 659. No mechanical application of these four policies will suffice. Though each may be conceptually distinct, the effects of their application in a particular context are intertwined.[19]

▇▇▇▇ None of these policies is likely to be furthered if there is clear indication that the original agency decision being challenged represents the agency's final position on the matter. Thus, the doctrine of exhaustion is not applied to those cases where pursuing an administrative remedy would be futile. *United States ex rel. Marrero v. Warden, Lewisburg Penitentiary, supra,* at 483 F.2d 659. In 74–C–427, as noted above, the response has been in the form of a motion to dismiss the petition for failure to exhaust administrative remedies or, in the alternative, a motion for an order requiring a more definite statement. Subsequent to the filing of this response, petitioner has filed a motion denominated a "motion for summary judgment," which is verified, and incorporated in which are letters from officials of the Bureau of Prisons, stating that they have reviewed petitioner's complaints and feel that they have been adequately handled. If the facts are as they appear in petitioner's "motion for summary judgment," it would be futile for petitioner to pursue 2001.6A procedures the outcome of which is not in doubt. I will treat petitioner's "motion for summary judgment" as an affidavit in opposition to respondent's motion to dismiss for failure to exhaust administrative remedies. Respondent has not as yet been afforded an opportunity to reply. That opportunity will be provided before I act upon the motion to dismiss.

▇▇▇▇ A second situation in which exhaustion is inappropriate arises when only issues of constitutional interpretation or statutory construction are at stake. *McKart v. United States, supra,* 395 U.S. at 196, 89 S.Ct. 1657; *United States ex rel. Marrero v. Warden, Lewisburg Penitentiary, supra,* 483 F.2d at 659.[20] In such cases the proper interpretation is not a matter of agency discretion; the agency brings no particular expertise to the task; and there is little likelihood that judicial resolution of the issue can eventually be avoided. In 74–C–443, at this stage of the proceedings, the sole issue appears to be a question of constitutional interpretation: whether the Fourteenth Amendment requires a statement of reasons and an opportunity to be heard prior to a transfer from Lorton to Oxford. It is true that an initial factual inquiry must be made as to whether any procedural protection was afforded petitioner prior to his transfer; if so, what procedures were followed; also if so, whether petitioner waived them. It is possible too, that some factual inquiry need be made concerning the nature of the respective regimes at Lorton and Oxford. But these are not formidable factual questions and, even if they were, 2001.6A embodies no fact-finding procedures nor record of findings amenable to judicial review. Exhaustion of the 2001.6A procedures should not be required.

▇▇▇▇ In 75–C–38, one can suppose that with respect to petitioner's eye

---

19. For example, absent provisions for the development of a factual record during the course of administrative adjudication, the policy of allowing an agency to exercise its expertise is of lessened importance. Lacking a record, a reviewing court will not be able to discern the manner in which administrative expertise was applied. Also, the likelihood that an agency will correct an existing error may well depend upon the nature of the procedures established for internal investigation and fact-finding.

20. Davis, *supra,* § 20.04.

problems, the warden or the regional director of the Bureau of Prisons or the assistant director of the Office of General Counsel and Review of the Bureau of Prisons would be slow to intrude upon the medical judgment of the chief of the health program at Oxford, as would the courts. But there is nothing comparable to the allegations in 74–C–427 to suggest that 2001.6A procedures would be unavailing because petitioner's grievance has already been looked into by the warden or his superiors and found to be baseless. Also, although gross failure to provide medical care raises a federal constitutional question, the determination and evaluation of the facts relating to petitioner's eye condition and medical treatment loom much larger than in 74–C–443 (procedures on transfer from Lorton to Oxford). On the other hand, there is no reason to believe that the warden or the regional director or the assistant director of the Office of General Counsel and Review would bring any particular expertise to this medical problem. Also, if 2001.6A procedures were followed, it seems probable that the only factual record which would be developed is the institution's medical record on the petitioner; this record could be gathered as readily for the first time in the course of a lawsuit. If the administrative procedures were more substantial than 2001.6A, I would be inclined to conclude that this petitioner should be required to exhaust, and that the Bureau of Prisons should have the opportunity to correct its own error if it were to appear that an error had been made. But that rationale is persuasive only where exhaustion will result in enabling an agency to investigate and make findings of fact as to its internal operations. It is possible that the present inmate grievance system prompts prison authorities to investigate informally the factual background of complaints received. But the system contains no component, e. g., evidentiary hearings, that assures that such investigation will occur. In the absence of such a showing, I cannot find that the respondents have demonstrated a particularized need for exhaustion in 75–C–38.

A difficult problem is presented by 75–C–39. As I have said earlier, habeas corpus may not be used to obtain relief for any injury which petitioner suffered in the single incident on April 6, 1974. The case has survived the ripeness test through this stage of pleading only because of the allegation that the warden has conspired to keep petitioner within a physical setting and within an internal institutional routine in which petitioner continues to be vulnerable to similar assaults. The response denies this latter allegation. Obviously, the case does not involve a pure, or nearly pure, question of constitutional or statutory construction. It does involve what is probably a rather complex factual inquiry, particularly into the relationship between the internal institutional routine, on the one hand, and the vulnerability of a particular inmate to assault, on the other. This is a subject to which Bureau of Prisons officials might be expected to bring particular expertise. These considerations suggest that resort to 2001.6A be required. But the response served and filed herein makes it rather clear that the respondent warden is aware of the petitioner's contention, that he has considered the matter, and that he has rejected the contention. The case is one in which the inmate's right to go directly to the regional director of the Bureau, and then if necessary to the Bureau's Office of General Counsel and Review, may be of critical importance. Of course, if the regional director or the Office of the General Counsel and Review, or both, were to treat the matter perfunctorily, perhaps by requesting a written or oral report from the warden at Oxford and nothing more, the 2001.6A procedure would be of little importance to the inmate. But if they were to take it seriously and to make a careful on-the-scene inquiry, and if they were to determine that significant changes in the internal institutional routine were necessary, the Bureau's opportunity to correct its own errors would

have been vindicated and the court would have been spared the need to adjudicate the matter. In the context of an administrative remedy other than 2001.6A, I would be inclined to require the petitioner to exhaust that remedy. However, I find the absence of any provision in 2001.6A for fact-finding and for the preparation of a record to be dispositive of respondent's contention. Absent such provision, the respondents have not shown a particularized need for exhaustion in 75–C–39.

### ORDER

Upon the basis of the entire record in each of the five cases set forth in the heading of this opinion and order, it is ordered that:

1. The petition in 74–C–235 is dismissed.

2. The petition in 74–C–427 is dismissed, except insofar as it seeks injunctive relief against particular conditions of confinement, namely, those aspects of the physical setting and internal institutional routine which allegedly render petitioner vulnerable to physical assault. With respect to the latter portion of the petition, respondent may serve and file, within 20 days from the date of this order, any affidavit or affidavits he may elect to file on the question whether the Bureau's position has already been determined, and whether resort to 2001.6A procedures would therefore be unavailing.

3. The amended petition in 74–C–443 is dismissed, except insofar as it seeks petitioner's return to the Lorton Reformatory in Virginia. Insofar as the motion to dismiss the amended petition is based on the ground that petitioner has failed to exhaust his administrative remedies, the motion to dismiss is denied.

4. The petition in 75–C–38 is dismissed, except insofar as it seeks injunctive relief against a particular condition of confinement, namely, the

alleged failure to provide medical treatment for petitioner's eye trouble. Insofar as the response prays for dismissal of the petition for failure to exhaust administrative remedies, the prayer for dismissal is denied.

5. The petition in 75–C–39 is dismissed, except insofar as it seeks injunctive relief against particular conditions of confinement, namely, those aspects of the physical setting and internal institutional routine which allegedly render petitioner vulnerable to physical assault. Insofar as the response prays for dismissal of the petition for failure to exhaust administrative remedies, the prayer for dismissal is denied.