**Leonard Whaylon SMITH, Plaintiff,**

v.

**Warden FENTON, Marion, Illinois, Defendant.**

**Civ. No. 753218.**

United States District Court, E. D. Illinois.

Dec. 6, 1976.

Leonard Whaylon Smith, pro se.

Henry A. Schwartz, U.S. Atty., East St. Louis, Ill., for defendant.

## ORDER

FOREMAN, District Judge.

Plaintiff is a federal prisoner currently incarcerated in the United States Penitentiary at Marion, Illinois. The defendant is the warden of that institution.[1]

The plaintiff's original complaint alleged that, while incarcerated at Leavenworth, Kansas, he was confined in a control unit for allegedly assaulting a federal employee. He then was convicted of assault and given a two year sentence. Six months later he was transferred to Marion, where he was confined in a control unit. The gravamen of his complaint is that he should not be confined to the control unit at Marion since he was already punished for his offense by virtue of his assault conviction. He seeks damages for his "illegal confinement" in

---

[1]. It has come to the Court's attention that there has been a change of wardens at the Marion Penitentiary. In habeas actions, the respondent is normally the warden of the institution in which the petitioner is incarcerated. Since most prisoner petitions are initially filed *pro se*, the Court has been liberal in allowing substitution of parties under Fed.R. of Civ.P. 17(a). In view of the disposition of this case, the Court has not substituted the new warden as a party-defendant.

the control unit, asking the Court to grant a just and fair amount for each day the plaintiff spent in the control unit.

■ This Court, pursuant to the standard announced in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), liberally construed plaintiff's *pro se* complaint and granted leave to proceed in forma pauperis.[2] The defendant answered and moved to dismiss for failure to exhaust administrative remedies. In his answer, defendant alleges that the plaintiff was afforded complete procedural safeguards before he was placed in the control unit and was also receiving monthly review of his status.

The plaintiff next filed what the Court construed to be a supplemental pleading alleging that the defendant was engaged in a subtle scheme forcing a "violent and revolutionary mentality upon claimant; " that the same scheme caused him to commit assaults at the federal penitentiaries in Lewisburg, Pennsylvania and Leavenworth, Kansas; and that this scheme was being used at Marion. He seeks a restraining order against defendant. Briefly summarized, the allegations in support of this claim are as follows:

1. Plaintiff's records falsely show that he is from Washington, D.C. The prison administrators think all inmates from Washington, D.C. are revolutionaries. Therefore, they erroneously think the plaintiff is a revolutionary.

2. To create a revolutionary atmosphere in the segregation unit, a few white inmates are placed in segregation for 2–3 weeks, while black inmates are kept in segregation for 2–3 years, thus creating a hostile environment.

3. There are no name tags over the cells. Thus, at mail call, guards ask whether the inmate is named Smith or Brown or Jones. The use of these surnames, common to blacks, upsets those blacks seeking a new cultural identity.

4. Harmful gases and fumes are pumped through the air vents in order to provoke plaintiff to violence.

5. In order to provoke violence, the lowest-ranking officials conduct institutional committee hearings.

6. Although militant and revolutionary literature is prevalent and easily obtained, plaintiff unsuccessfully had spent two months trying to get a Bible.

7. Plaintiff is handcuffed when taken before the committee, and thus is made to feel helpless. In addition, he is unable to write or take notes at the committee hearings.

8. The only exercise equipment available is "fight exercise equipment." The equipment is to provoke physical acts and create violent thoughts.

9. The claimant is only given ten minutes in which to shower and shave. The time is insufficient. Thus, plaintiff is encouraged to grow a beard, giving him a revolutionary image.

10. Seven hand-picked revolutionaries are subjected to this same treatment. Plaintiff is deliberately confined on the same range as these inmates.[3]

The plaintiff submitted one final "supplemental" pleading in which he stated that mind-altering drugs were being injected into his food and drink, thus causing him to hallucinate. He repeats the averment that

---

2. The instant complaint was viewed as coming under the aegis of § 1331. Although plaintiff pleaded no jurisdictional amount, the Court has determined that to impose such a requirement at this stage would fly in the face of the Supreme Court's mandate in *Haines.*

3. Since this pleading was filed in a case already commenced, the Court was not faced with the

decision of whether to grant leave to proceed in forma pauperis. Although an initial reaction is to treat these allegations as frivolous, the allegation that noxious fumes were pumped into plaintiff's cell, if proven, would state a claim of cruel and unusual punishment. See *Nelson v. Heyne,* 491 F.2d 352 (7th Cir. 1974).

gases are being pumped into his cell. In what could be viewed as a prayer for relief, he seeks the immediate payment of three million ($3,000,000.00) dollars.

 The several pleadings submitted by the petitioner admit of several potential constructions. The first plausible construction would be to construe the petition as a damage claim under 28 U.S.C. § 1331 for a violation of plaintiff's civil rights. The plaintiff seeks damages because he was placed in segregation upon his arrival at Marion. But the mere fact that a petitioner is placed in segregation does not violate constitutional standards, *Bickham v. Cannon*, 516 F.2d 885 (7th Cir. 1975). Thus, the bare allegation by an inmate that he is confined in a segregation unit is insufficient to allege a denial of a constitutional right. Accordingly, this pleading will not be construed in this manner.[4]

The remaining construction alleges an unconstitutional condition of confinement. Plaintiff alleges facts which, if true, could state a cruel and unusual punishment claim. In one pleading the plaintiff seeks release from these conditions, in another he seeks damages. In a habeas action, the proper relief is release from the unconstitutional conditions of confinement. The pleading will be construed as an application for a writ of habeas corpus and jurisdiction is vested under 28 U.S.C. § 2241.

The Court now turns to the defendant's motion to dismiss for failure to exhaust administrative remedies.

 Several jurisdictional statutes require exhaustion of administrative remedies as a condition precedent to filing suit in the federal courts. See, e. g., the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* and the

Freedom of Information Act, 5 U.S.C. § 552. The statutory grant of jurisdiction in habeas corpus cases, 28 U.S.C. § 2241 *et seq.*, contains no such express directive. Therefore, whether to require exhaustion is left to the discretion of the trial court, *United States ex rel. Marrero v. Warden*, 483 F.2d 656 (3d Cir. 1973).

 The premises upon which the exhaustion doctrine is based are that 1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and to apply its expertise; 2) judicial time may be conserved because the agency might grant the relief sought; 3) administrative autonomy requires that an agency be given an opportunity to correct its own errors. *Marrero, supra.*

 Before this Court would require exhaustion of administrative remedies, however, it must be satisfied that a viable remedy is available. Bureau of Prison Policy Statement 2001.6A outlines the administrative remedy procedure available to federal prisoners.

Policy Statement 2001.6A identifies its purposes as a means for internal solution of problems at a local level, and to provide a written record in the event of subsequent judicial review.

The procedure itself allows complaints to be filed within 30 days from the date of the incident forming the basis of the complaint. A response is required within 15 days from receipt of the complaint. In emergency situations, a response is required within 48 hours of receipt of the complaint.

Within 30 days of receipt of an unsatisfactory response, the inmate may appeal to the Regional Director. 20 days, excluding

---

4. An inmate placed in segregation is entitled to certain procedural safeguards. See *Powell v. Ward*, 392 F.Supp. 628 (S.D.N.Y.1975). Cf. *Wolff v. McDonnell*, 418 U.S. 539, 563–567, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Bureau of Prison Policy Statement 7400.5C establishes procedures to be followed when an inmate is placed in segregation. One reason for placing a person in segregation is for the protection of other inmates and staff members. In his pleadings the plaintiff admitted having committed

assaults at other penitentiaries. Furthermore, he also stated that he appears before an adjustment committee (presumably to review his status). These facts indicate compliance with due process safeguards. Coupled with the absence of any allegation that his detention in segregation violates due process, it would be inappropriate to construe the complaint as an attack on the procedures used to place him in segregation.

weekends and holidays, limit the time for a response. A final appeal is permitted to be sent to the Assistant Director, Office of General Counsel and Review, Bureau of Prisons. The time limits are identical to those for appeal to the Regional Director. Finally, complaints of a sensitive nature may be sent directly to the Regional Director.

In 1975, 392 complaints were filed at the Marion Penitentiary. Of this number, 65 (17%) were granted, 276 (70%) were denied, and 51 (13%) received some other disposition. 111 appeals were taken to the Regional Director. 4 were granted, 69 denied, and 38 prematurely filed. Appeals to the General Counsel numbered 64. Of this number, 2 were granted, 38 denied, and 24 prematurely appealed.

■ The procedures provided by the grievance procedures are fair. A remedy may be had. Thus, the Court finds that a viable remedy is available. The Court now must decide whether to require exhaustion in these types of cases.

The first premise upon which the exhaustion doctrine is based is that the agency may apply its expertise to the situation. This factor is important where technical factual issues are to be decided. In the prison context the cases are not highly technical, however. No particularized expertise is required. A court can handle most inmate suits without the aid of agency fact finding expertise. This situation is not the type where exhaustion would be required to aid the Court's eventual decisions.

A related premise is that a factual record is developed in the case of subsequent judicial review. The administrative remedy procedure does not call for any formal fact-finding procedures. But written complaints and responses are required. As this case illustrates, it is often most difficult to determine an inmate's particular complaint. Even when required to furnish a more definite statement, a prisoner is often unable to satisfactorily do so. In the prisoner petitions which have been filed in this Court

accompanied by proof of exhaustion of administrative remedies, the statement of the grievance in an administrative grievance form, and the prison official's response thereto, often pinpoint the gist of the complaint. Further proceedings are thereby facilitated. In this respect, therefore, a "factual record" for use in subsequent judicial review is formed.

Similarly, the grievance procedure provides for a prompt written response to a complaint and a statement of the reasons for its denial. If judicial proceedings should follow, this response is apt to be more accurate than a response to a show cause order in the judicial proceedings itself. When called into court to account for their actions, it is not inconceivable to suspect that prison officials' versions of the facts are somewhat tempered. Cf. *Bracey v. Herringa,* 466 F.2d 702 (7th Cir. 1972). Therefore, a response from prison officials may be more accurate if derived from a grievance procedure than if the official were merely filing an answer to a pending suit. Thus, the requirements of exhaustion could well inure to an inmate's advantage by providing written evidence in a subsequent hearing. Consequently, in terms of the development of a factual record for subsequent judicial determination, at least a minimal advantage is gained by requiring exhaustion.

Another advantage to be gained from requiring administrative exhaustion is a significant saving of judicial resources. An administrative agency may grant the requested relief, thus obviating the need to expend judicial time or effort. In order to fully analyze this factor, it is necessary to describe the impact prisoner petitions have had on the federal courts. The Seventh Circuit recognized this problem when it reprinted the following excerpt from an opinion by Judge Doyle of the Western District of Wisconsin:

This is but one of the flood of constitutional lawsuits by prisoners. These suits have heavily burdened correctional authorities by requiring them to gather and

to organize factual information for court pleadings, and to appear occasionally in court. The federal courts are also heavily burdened by this radical addition to their caseloads, and the absence of plaintiffs' counsel in most cases and the physical restraints upon the plaintiffs frequently render judicial administration unusually difficult. Many of these suits by indigent prisoners are wholly without merit under any view of the facts or the law; many are mischievous; some malicious. The plaintiffs are uninhibited by financial pressures. For many of these plaintiffs, that the very bringing of the suits in such numbers creates a serious problem for correctional authorities and the courts is a matter of indifference, and, perhaps, of wry satisfaction.

*Morales v. Schmidt,* 494 F.2d 85 (7th Cir. 1974).

Within the confines of this Court's jurisdiction there are four penal institutions. In addition to the federal penitentiary at Marion, there are Illinois institutions at Menard, Vandalia and Vienna. During the first ten months of calendar year 1976, a total of 245 civil cases have been filed in the East St. Louis Clerk's Office of the Eastern District of Illinois, 132 by prison inmates. In the vast majority of these cases the filing fee has been waived because the prisoner is indigent. In addition, in another 93 cases leave to proceed in forma pauperis has been denied.[5]

The Court has attempted to deal with these cases fairly and efficiently. Rather than shirk the responsibility of this caseload, the Court has made every effort to accommodate it. For example, the Court facilitated the handling of nonjury prisoner petitions by establishing an adjunct courtroom in the visitor's area of the Marion Penitentiary. The Court consistently has appointed counsel for prisoners in habeas corpus proceedings, exercising its discretion under 18 U.S.C. § 3006A. Likewise, in cases in which there is no authority to appoint counsel, the Court has attempted to solicit aid for the prisoners from the legal clinic of a local law school.

Despite these efforts, the sheer volume of prisoner cases has made it impossible to avoid a backlog. Two consequences have resulted from the large number of petitions submitted by prisoners. First, the Congressional intent to grant a prompt hearing in habeas cases is not always met;[6] and second, the numerous nonmeritorious claims filed cause the meritorious complaints to be inordinately delayed. In an effort to treat all petitions fairly, those with merit sometimes fall prey to the warnings espoused in an old legal adage: "Justice delayed is justice denied."[7]

A previous suit filed by the plaintiff herein illustrates the impact of prisoner petitions on the Court's time. In Civil No. 75–3232, the plaintiff filed a petition for a writ of habeas corpus alleging that he was

---

**5.** 28 U.S.C. § 1915(d) authorizes the Court to deny leave to proceed in forma pauperis if the petition is frivolous or malicious. This Court denies leave to proceed only in cases where it is quite clear that no relief may be granted. For example, often suits are brought against the officials who prosecuted the prisoner. Judges and prosecuting attorneys are named defendants. Since these officials are protected by immunity, there is no hope for relief in these cases and leave to proceed in forma pauperis is denied. Other petitions have sought the arrest and incarceration of elected officials, from the President on down. The Court denies leave to proceed in these cases. The remainder do not fall into these common patterns but are for various reasons, frivolous within the meaning of 1915(d).

**6.** For example, 28 U.S.C. § 2243 requires the return to a habeas petition to be made within 3 days, with an additional 20 days granted for good cause shown. This total of 23 days cannot be enlarged, see Fed.Rules Civ.Proc. Rule 81(a)(2). Yet, prison officials are often unable to meet these deadlines. Even when they do, it usually is impossible to grant an immediate hearing.

**7.** The problem is not indigenous to this Court. In the 1976 Annual Report of the Director, Administrative Office of the United States Courts, the total number of prisoner petitions filed in fiscal 1976 was 19,809, or 15.2% of all civil filings, pp. 95–96. Filings by Federal prisoners declined, however, by 5.3%, apparently because of the adoption of administrative grievance procedures. *Id.*

wrongfully placed in segregation.[8] The Court set the case for a hearing and appointed counsel for the plaintiff. On the day set for the hearing the plaintiff initially refused to emerge from his cell. Although he finally came into the courtroom, it was only to request dismissal of his suit. After fully satisfying itself that the reason for this request was not fear of retaliation by prison officials for filing a lawsuit, the Court granted the request and dismissed the case. The sum total of that lawsuit was a waste of time for all parties concerned and a waste of the defendant's and taxpayer's money.

The requirement that the prisoner exhaust his administrative remedies could help alleviate this unnecessary drain on judicial and public resources. The first possible alternative is that the inmate's request could be granted by prison officials and no case would be filed. On the other hand, a prisoner may be unwilling to bring a non-meritorious claim if the prisoner must first go through the administrative remedy procedure before resorting to the courts. A third possibility is that the filing of a grievance procedure may serve as a substitute for the filing of a federal case. An alternative forum would be available to the inmate in which he could vent his anger and frustration at adverse decisions of administrators. Even if the grievance is eventually denied, the prisoner will have had an outlet for his frustration. He may realize that any suit he filed would be solely for harassment, and therefore not file a suit. Consequently, this factor—that exhaustion may conserve judicial time—weighs heavily in favor of requiring exhaustion.

The final factor to be considered in requiring administrative exhaustion is that an autonomous agency should be given an opportunity to correct its own errors. It is entirely possible that a wrong decision by a prison official would be corrected by the warden if brought to his attention. The Court must accept the good faith of the administrators in dealing with the grievance procedure. Any other attitude would require the courts to take an active role in managing the prison systems, a role that they have not been given by Congress, nor are well suited to carry out.

In this case the inmate has alleged that his conditions of confinement are oppressive. He alleges that his food is drugged and that noxious gases are piped into his cell. He has several less serious complaints; he cannot obtain a Bible, he is handcuffed when brought before the adjustment committee and his files show he is from Washington, D.C. The latter three grievances may well be handled by the Marion staff. The first two charges, though more serious, may be occasioned by other than a plan to subject the plaintiff to cruel and unusual punishment. Conceivably, an odor could be coming into the plaintiff's cell. Even in the best-kept buildings plumbing may back up, or other causes of odors develop. The prison officials themselves are in the best position to determine whether such conditions exist and to correct them. If no relief is forthcoming, the inmate may then resort to the courts. Similarly, he may be dissatisfied with the taste of the food or certain ingredients in the food may upset his system. The prison officials are best able to make these determinations. Thus, this factor weighs in favor of requiring exhaustion.

In summary, a balance of the premises upon which the exhaustion doctrine is based weighs in favor of requiring administrative exhaustion. Judicial review will be aided by allowing the agency to apply its expertise and to establish a factual record, and Judicial time may be conserved if the agency is given an opportunity to grant the requested relief for meritorious claims and to correct its own errors.

In considering the issues of whether to require exhaustion, the Court is not unmindful of the decisions of other federal courts that have dealt with the problem. The Court is unaware of any Seventh Cir-

---

**8.** In fact, the allegations were quite similar to those in the instant case, except damages were sought in this case.

cuit holding on the issue, but within the Circuit, district courts have split on the issue. Compare *Cravatt v. Thomas,* 399 F.Supp. 956 (W.D.Wis.1975) (no exhaustion required) with *Bijeol v. Benson,* 404 F.Supp. 595 (S.D.Ind.1975) (exhaustion required). Other circuits have required exhaustion in appropriate cases. See *Willis v. Ciccone,* 506 F.2d 1011 (8th Cir. 1974); *Waddell v. Alldredge,* 480 F.2d 1078 (3d Cir. 1973); *Paden v. United States,*430 F.2d 882 (5th Cir. 1970). Although the Supreme Court has expressed no official view on the issue, see *Procunier v. Martinez,* 416 U.S. 396, 405 n. 9, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Chief Justice has suggested the institution of internal grievance procedures in prisons, 59 A.B.A.J. 1125, 1128 (1973). Likewise, when speaking in dicta to the issue of exhaustion of administrative remedies in mandamus actions the Seventh Circuit did state:

> "When prison administration is involved and fair procedures are available, a prisoner can often obtain expeditious review and relief without the necessity of seeking a remedy through the courts." (citation omitted)

*Holmes v. United States Bd. of Parole,* 541 F.2d 1243 (7th Cir. 1976). The trend seems to be clearly in favor of requiring exhaustion.

One final comment is necessary. In making the decision to require exhaustion, the Court is aware that access to the courts will be delayed. Delay is the concomitant of any requirement of exhaustion of administrative remedies. Yet, if a prisoner acts promptly,[9] his administrative grievance will be handled within 75 days of the event that he is protesting. This is the maximum period of time required to complete the procedure. If this requirement eliminates some of the frivolous and malicious suits, as well

as those meritorious suits in which relief is granted at the administrative level, the lost time may well be recaptured by enabling the Court to act more swiftly on the case. In fact, exhaustion may well speed up the judicial process with regard to prisoner petitions. Therefore, the Court finds the initial delay no impediment to imposing such a requirement.[10]

In conclusion, the plaintiff's claim will be construed as an application for a writ of habeas corpus. The defendant's motion to dismiss for failure to exhaust administrative remedies is GRANTED.

---

**9.** In this Court's experience, inmates are quite prompt in pointing out their grievances.

**10.** The Court would expect full cooperation from prison officials in promptly ruling on prisoner grievances, in making the appropriate forms available, and in informing inmates that it is more appropriate to file a grievance than to immediately seek redress in the courts. In

addition, according to the grievance procedure, complaints must be filed within 30 days from the date of the occurrence, unless good cause is shown. If an inmate's court petition is rejected for failure to exhaust administrative remedies, it is expected that good cause would be automatically shown for purposes of the time limit within which to file an inmate grievance.