MARTINEAU, individually and as trustee, Appellant, v. STATE CONSERVATION COMMISSION, Respondent.*

*No. 175. Argued March 4, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 206.)

* Motion for rehearing denied, without costs, on June 2, 1970, WILKIE, J., taking no part.

For the appellant there was a brief and oral argument by *Dale T. McKenna* of Jefferson.

For the respondent there was a brief by *Bakken & Feifarek* of Madison, and oral argument by *James F. Bakken.*

HALLOWS, C. J.   The property in question consists of approximately 58 acres lying just east of Palmyra, north

of State Highway 59 and between County Trunk H and County Trunk Z, in Jefferson county. Approximately 30 acres constitute a pond which was created by the construction of a dirt dam 40 feet wide at its base, 12 feet wide at the top and 375 feet long across the Scuppernong Creek. This body of water is now known as Upper Spring Lake. The earthen dam is located at the southerly portion of the property just north of State Highway 59. This part of the property consists of about two and one-fourth acres, on which is located the dam, a two-story four-bedroom house, garage, stone barn, and a recently built artist studio. The remaining acreage behind the dam constitutes a strip of irregular land surrounding the pond and exists because the dam is regulated to keep the pond at a depth of nine feet. If the depth of the water were increased to 13 feet and four inches, this surrounding land would be submerged and the water's edge would correspond with the perimeter or boundary of Mrs. Martineau's property. Historically, this property was purchased prior to 1851 for a millsite and the mill was in operation from about that time until 1904. The property now lies entirely within an area which has been designated as the Kettle Moraine State Forest.

The dispute over this property has a dramatic history beginning in 1962 when the board first attempted to purchase and add it to other government owned property in the Kettle Moraine State Forest. However, Mrs. Martineau has consistently declined to sell the property to the state. In 1964 the board determined Scuppernong Creek was navigable water and told all persons who inquired that they could use the lake for fishing and hunting. The board published a brochure containing a map of the Kettle Moraine State Forest which included this property as part of the forest without designating it as being privately owned. Although Mrs. Martineau posted signs, there were many trespassers and the

trespassing led to many incidents and clashes with Mrs. Martineau.

The situation has become a "cause célèbre" in southeastern Wisconsin and involves the efforts of a woman to defend her land against what she believes to be the encroachment by the state and the violations of her rights by the public encouraged by the state. She has defended her rights to the extent of using a gun to ward off trespassers.

In the record there is an account of how Mrs. Martineau, described as a crack shot, pumped three bullets into the prow of the boat of two astonished Milwaukee men who were fishing on the pond and who were led to believe they had a right to do so by the state of Wisconsin but had been warned to keep off the pond by Mrs. Martineau. The incident recalls another historic defense of private property of a generation ago by a farmer, John F. Dietz, who lived upon a small stream in Sawyer county near Winter. That incident was known as the "Battle of Cameron Dam" and the trial of Dietz for killing a law officer is reported in *Dietz v. State* (1912), 149 Wis. 462, 136 N. W. 166.

The board wants Mrs. Martineau's property and plans to use it with the surrounding land the state owns or is acquiring in the Kettle Moraine State Forest for use as a group camp. The state plans to build dormitories, a mess hall, necessary sanitation facilities, and associated playgrounds for use by school groups such as boys' schools, girls' schools, and 4-H groups. The question is, has the board the power to acquire this property within the state forest by condemnation? The answer depends upon the construction of three sections of the statutes, *i.e.,* the Conservation Act of 1927, the eminent domain statute of 1919, and secs. 28.01 through 28.09 created in 1949 relating to state forests.

The board relies on sec. 23.09 (1) and (7) (d) [1] and sec. 32.02 (1),[2] Stats., for its authority to condemn the property for state forest purposes. Sub. (7) (d) of the Conservation Act was created by ch. 426, Laws of 1927. This section provides the board can acquire land for state forest purposes or to provide public recreation in said forests. The general chapter on eminent domain, ch. 32,

---

[1] "23.09 Conservation act. (1) PURPOSES. The purpose of this section is to provide an adequate and flexible system for the protection, development and use of forests, fish and game, lakes, streams, plant life, flowers and other outdoor resources in this state.

" . . .

"(7) COMMISSION RULES; STUDIES; SURVEYS; SERVICES; PENALTIES; POWERS; LONG-RANGE PLANNING. . . . The commission may:

" . . .

"(d) *Lands, acquisition.* Acquire by purchase, condemnation, lease or agreement, and receive by gifts or devise, lands or waters suitable for the purpose hereinafter enumerated, and maintain the same for the said purposes:

"1. For state forests for the purpose of growing timber, demonstrating forestry methods, protecting watersheds or providing public recreation.

"2. For state parks for the purpose of preserving scenic or historical values or natural wonders.

" . . ."

[2] "32.02 **Who may condemn; purposes.** The following municipalities, boards, commissions, public officers and corporations may acquire by condemnation any real estate and personal property appurtenant thereto or interest therein which they have power to acquire and hold or transfer to the state, for the purposes specified, in case such property cannot be acquired by gift or purchase at an agreed price:

"(1) Any county, town, village, city including villages and cities incorporated under general or special acts, school district, soil conservation district, the state department of public welfare, the regents of the university of Wisconsin, the board of regents of state colleges, a commission created by contract under s. 66.30, with the approval of the municipality in which condemnation is proposed, or any public board or commission, for any lawful purpose, but in the case of city and village boards or commissions approval thereof shall have been granted by the governing body."

was created by ch. 571, Laws of 1919, and sec. 32.02 (1) provides for the general use of condemnation by any public board or commission which has the power to acquire and hold the property it wishes to condemn.

Mrs. Martineau argues that these sections are not applicable to her property because sec. 28.02 (2), Stats.,[3] does not give the board the power of condemnation. This section is a specific section relating to state forest lands and it is contained in ch. 28 entitled "Public Forests." It was created by ch. 474, secs. 5 and 6, Laws of 1949, and prescribes the methods of acquiring state forest lands which may be used by the board and does not designate condemnation. In sec. 28.03 (2) (d) the Kettle Moraine State Forest is designated as a state forest and as having been established by the board.

The trial court held that the failure to grant by express delegation the right of condemnation to the board in ch. 28 did not indicate an intention to prohibit condemnation of property for the Kettle Moraine State Forest. The trial court reasoned the rules of statutory construction required it to construe sec. 28.02 (2) in harmony with sec. 23.09 (7) (d), otherwise the latter section would be repealed by implication which is not favored by the law. We disagree. Such a construction reads into sec. 28.02 (2) a power which is not there.

Only those parts of sec. 23.09 (7) (d) and of sec. 32.02 (1), Stats., to the extent of their application to the state forests, are repealed by implication, and this is justified because the legislature intended to do just that

---

[3] "28.02  State forest lands.

". . .

"(2) ACQUISITION. The commission may acquire lands or interest in lands by grant, devise, gift or purchase within the boundaries of established state forests or purchase areas; and outside of such boundaries for forest nurseries, tracts for forestry research or demonstration and for forest protection structures, or for access to such properties."

in enacting sec. 28.02 (2). In the general comment to ch. 474, Laws of 1949, which created sec. 28.02 (2), the statement is made that the new provisions pertaining to state forests were largely a codification of the then board's policy and in some cases more restrictive than the present law. In 1947, two years prior to the codification of ch. 28, ch. 27 was created to encompass public parks and contained similarly grouped matters. However, in ch. 27 relating to public parks, as distinguished from forests, the power of condemnation was expressly granted to the board in sec. 27.01 (2) (a). Both these sections, the one relating to state forests and the other to state parks, were codified by repealing and re-creating new sections. *See* ch. 549, Laws of 1947, and ch. 474, Laws of 1949. We think the legislative history of these two statutes is significant.

It is a cardinal rule of statutory construction that when a general and a specific statute relate to the same subject matter, the specific statute controls and this is especially true when the specific statute is enacted after the enactment of the general statute. *Raisanen v. Milwaukee* (1967), 35 Wis. 2d 504, 516, 151 N. W. 2d 129; *Wauwatosa v. Grunewald* (1962), 18 Wis. 2d 83, 118 N. W. 2d 128; *Pruitt v. State* (1962), 16 Wis. 2d 169, 114 N. W. 2d 148; *Maier v. Racine County* (1957), 1 Wis. 2d 384, 84 N. W. 2d 76; *see also Union Cemetery v. Milwaukee* (1961), 13 Wis. 2d 64, 108 N. W. 2d 180. We must construe sec. 28.02 (2), Stats., to mean the board does not have the power by condemnation to acquire lands lying within the boundaries of an established state forest but is restricted to grants, devises, gifts, or purchases of such property.

Because of this disposition of the case, it is not necessary to consider the questions of necessity and of bad faith raised in the trial court and argued on appeal.

*By the Court.*—Judgment reversed, with directions to the circuit court to void the jurisdictional offer and to

terminate the condemnation proceeding of the land in question by the Natural Resource Board of the Department of Natural Resources.

WILKIE, J., took no part after oral argument.