CHARLES M. HILL, SR., Secretary, Department of Local Affairs andDevelopment
You have requested the opinion of this office concerning the applicability of the Relocation Act, secs. 32.19 to 32.27, Stats., to the land acquisition activities of the sixteen Vocational, Technical and Adult Education (VTAE) districts, located throughout the State of Wisconsin. The answer to this request requires an examination of the Relocation Act, the general statutes relating to the power of eminent domain, the statutes defining the powers of the VTAE districts, and the powers of the State Board of Vocational, Technical and Adult Education (VTAE Board).
In my opinion, the Relocation Act, secs. 32.19 to 32.27, Stats., applies only to authorities which possess the power of eminent domain. The Relocation Act is ambiguous in this respect, however, so it is necessary to explain the basis of my opinion on this matter in some detail.
The term "condemnor" is employed consistently throughout the Relocation Act to designate the authorities to whom the Act applies. In all, the word "condemnor" is so employed on twenty-seven different occasions in the Relocation Act.
Section 990.01, Stats., provides:
 "Construction of laws; words and phrases. In the construction of Wisconsin laws the words and phrases which *Page 368 
follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature:
 "(1) GENERAL RULE. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."
The word "condemnor" is generally used in legal parlance to denote an authority actually exercising the power of eminent domain. "Condemnor," in its usual legal usage, is the correlative of "condemnee." "Condemnor" is used in this sense in Luber v.Milwaukee County (1970), 47 Wis.2d 271, 279, 177 N.W.2d 380, for example. Ordinarily, therefore, the word "condemnor" used in a statute would be construed to mean "authority employing the power of eminent domain."
Moreover, the words "land condemned" appear in sec. 32.19 (4) (a) 2, Stats., and the phrase "such condemning authority" appears in sec. 32.20, Stats. The Relocation Act itself is located in the eminent domain section of the statutes, ch. 32.
However, statutory language will not be construed to produce a result inconsistent with the manifest intent of the legislature. Sec. 990.01, Stats.
There is a considerable amount of internal evidence in the Relocation Act indicating that the legislature did not intend the ordinary legal meaning of "condemnor" when it employed that word in the Relocation Act. The legislative declaration of purpose does not even refer to the power of eminent domain. Moreover, many benefits provided by the Act require that the beneficiary be a "displaced person." "Displaced Person," as defined in sec.32.19 (2) (c), Stats., includes:
 ". . . any person who moves from real property or who moves his personal property from real property, . . . as a result of the acquisition of such real property, in whole or in part or subsequent to the issuance of a jurisdictional offer under this chapter, for public purposes or, as the result of the acquisition for public purposes of other real property on which such person *Page 369 
conducts a business or farm operation or, who moves or discontinues his business, or moves other personal property, or moves from his dwelling . . . as a direct result of any project or program undertaken under title I of the federal housing act of 1949, as amended, or as a result of carrying out a comprehensive city demonstration program under title I of the federal demonstration cities and metropolitan development act of 1966." (Emphasis added.)
The "jurisdictional offer" mentioned in the quoted statute is a specific step in condemnation proceedings under ch. 32, Stats. The explicit reference to condemnation in the quoted statutory provision is supplemented with language referring to "acquisitions." In construing a statute, effect is to be given to every word, clause and sentence if possible. Fuller v. Spieker
(1954), 265 Wis. 601, 603, 62 N.W.2d 713. Thus, the definition of "displaced person" in sec. 32.19 (2) (c), Stats., encompasses persons and businesses displaced as a result of land acquisition activities including, but not limited to, condemnation.
Additionally, sec. 32.20, Stats., which provides the procedure for the collection of itemized items of compensation, contains the words "condemnee's or claimant's" and the phrase "in case no condemnation is involved." The import of this language is plain.
Finally, sec. 32.25 (1), Stats., provides:
 ". . . no condemnor shall proceed with any property acquisition activities on any project which may involve acquisition of property and displacement of persons, business concerns or farm operations until the condemnor has filed in writing a relocation payment plan and relocation assistance service plan and has had both such plans approved in writing by the department of local affairs and development." (Emphasis added.)
The quoted statutory provision refers to "acquisition" of property as do many other sections of the Relocation Act. Section32.19 (2) (c), Stats., is an example. The word "acquisition" has a broader definition than the word "condemnation." Thus, in common usage it is proper to state that one makes an acquisition by means of condemnation or by some other means. "Acquire," the root word of *Page 370 
"acquisition," is defined in the statutes to include "condemnation" as well as other means of obtaining title to property. Sec. 990.01 (2), Stats. Use of the word "acquisition" in the statute in question suggests that the legislature intended the statute to apply to more than the "condemnation" activities of a "condemnor." This being the case, "condemnor" must denote something in the Relocation Act other than its usual legal definition described above. A serious ambiguity is therefore presented by the use of the word "condemnor" in the context of the Relocation Act.
The problem is to ascertain the precise meaning of the word "condemnor" intended by the legislature in the Relocation Act. Because the statute is ambiguous in this regard, resort may be had to the rules of statutory construction. Miller v. Wadkins
(1966), 31 Wis.2d 281, 284, 285, 142 N.W.2d 855.
A statute should be construed to effectuate its leading idea and the whole should be brought into harmony therewith if possible. Pella Ins. Co. v. Hartland R. T. Ins. Co. (1965),26 Wis.2d 29, 41, 132 N.W.2d 225. Moreover, in determining the meaning of any single phrase in a statute, it is necessary to look at it in the light of the whole statute. State ex rel.Tilkens v. Board of Trustees (1948), 253 Wis. 371, 373,34 N.W.2d 248. The statute should first be examined to determine the legislative purpose, and when that purpose is determined, it is to be construed so as to effect the evident purpose of the legislature if the language admits of that construction. PellaIns. Co., supra.
In determining legislative purpose, the declaration of the legislature is entitled to great weight. State ex rel. Harvey v.Morgan (1966), 30 Wis.2d 1, 10, 139 N.W.2d 585.
Section 32.19 (1), Stats., declares the legislative purpose underlying the Relocation Act. Secs. 32.19 to 32.27, Stats. That section states:
 "(1) DECLARATION OF PURPOSE. The legislature declares that it is in the public interest that persons displaced by any public project be fairly compensated by payment for the property acquired and other losses hereinafter described and suffered as the result of programs designed for the benefit of the public as a whole; and the legislature further finds and declares *Page 371 
that, notwithstanding ch. 275, laws of 1931, or any other provision of law, payment of such relocation assistance and assistance in the acquisition of replacement housing are proper costs of the construction of public improvements. If the public improvement is funded in whole or in part by a nonlapsible trust, the relocation payments and assistance constitute a purpose for which the fund of the trust is accountable."
Thus, the evident purpose of the Relocation Act is to remedy the evils of dislocation attending the acquisition of real property for public projects. The evils of dislocation are the same whether or not the power of condemnation is exercised to acquire the property involved.
The Relocation Act is a remedial statute, as is shown by the declaration of purpose in sec. 32.19 (1), Stats. Remedial statutes are to be construed liberally to advance the remedy.Hall v. Merrill (1947), 251 Wis. 203, 209, 28 N.W.2d 363. Thus, the Relocation Act should be construed liberally to suppress the evils of dislocation attending acquisitions of real property for public projects.
Accordingly, in order to give full effect to all parts of the Relocation Act, and to harmonize the parts with the intent underlying the whole, I interpret the word "condemnor" as denoting those land acquiring authorities which possess the power of eminent domain. Cf., OAG, August 3, 1973, addressed to Mr. Charles M. Hill, Sr. Therefore, in my opinion, the Relocation Act applies only to authorities vested with the power of eminent domain.
The answer to your inquiry depends, then, upon whether or not the VTAE districts or the VTAE Board are vested with the power of eminent domain. In my opinion, they are not.
State administrative agencies have only such powers as are expressly granted to them or necessarily implied and any power attempted to be exercised must be found within the statute under which the agency proceeds. American Brass Co. v. State Board ofHealth (1944), 245 Wis. 440, 448, 15 N.W.2d 27.
Section 38.04, Stats., which establishes the powers and duties of the VTAE Board, does not even grant the Board the power to hold and acquire real property.
Section 32.02, Stats., provides: *Page 372 
 "Who may condemn; purposes. The following municipalities, boards, commissions, public officers and corporations may acquire by condemnation any real estate and personal property appurtenant thereto or interest therein which they have power to acquire and hold or transfer to the state, for the purposes specified, in case such property cannot be acquired by gift or purchase at an agreed price:
 "(1) Any . . . school district, . . . or any public board or commission, for any lawful purpose, . . ." (Emphasis added.)
Section 990.01 (2), Stats., provides:
 "ACQUIRE. `Acquire,' when used in connection with a grant of power to any person, includes the acquisition by purchase, grant, gift or bequest. It includes the power to condemn in the cases specified in s. 32.02."
Since the VTAE Board lacks the power to "acquire" real property, it also lacks the power to condemn it.
The VTAE districts are governed by the district boards. Arguable, these boards are "boards" in the context of sec. 32.02
(2), Stats. The VTAE districts may also be "school districts" in context of sec. 32.02 (1), Stats., even though they are clearly not "school districts" in context of sec. 115.01 (3), Stats. As will be shown, even if either or both of these possibilities is fact, sec. 32.02 (1), Stats., does not confer condemnation powers on the VTAE districts.
Section 38.14, Stats., establishes the powers of the VTAE district boards. Section 38.14 (2), Stats., provides:
 "(a) For the use of the district schools, the district board may:
"***
"2. Purchase or lease suitable land and buildings . . ."
Thus, sec. 38.14 (2), Stats., specifically limits the land acquiring authority of the VTAE districts to acquisition by "purchase" or "lease." The VTAE districts do not have general authority to "acquire" land. *Page 373 
In Martineau v. State Conservation Comm. (1970), 46 Wis.2d 443,175 N.W.2d 206, a state commission attempted to condemn lands under authority of sec. 32.02 (1), Stats. Another statute created after sec. 32.02 (2), granted the commission power to acquire lands for the purpose in question by grant, devise, gift or purchase, but did not expressly grant the power of eminent domain. The court stated:
 "It is a cardinal rule of statutory construction that when a general and a specific statute relate to the same matter, the specific statute controls and this is especially true when the specific statute is enacted after enactment of the general statute." 46 Wis.2d at 449.
The court held that the commission could not exercise the power of eminent domain for the purpose in question.
The operative facts of Martineau are virtually identical to the operative facts of the situation presently under discussion. Section 32.02 (1), Stats., was created by ch. 571, Laws of 1919. Thus, the holding in Martineau must be deemed controlling in the present case. The specific later statute (sec. 38.14 (2) created by ch. 154, Laws of 1971), controls over the earlier, general statute (sec. 32.02 (1)). Therefore, the VTAE districts do not have the power of eminent domain.
In summary, then, I have concluded that the Relocation Act, secs. 32.19 to 32.27, Stats., applies only to authorities possessing the power of eminent domain. I have also concluded the VTAE districts do not possess the power of eminent domain. Moreover, the VTAE Board has no authority to acquire real property by condemnation. Therefore, I conclude that the VTAE Board and the VTAE districts are not subject to the requirements of the Relocation Act, secs. 32.19 to 32.27, Stats.
RWW:CAB *Page 374