Eduardo M. PEREZ, Plaintiff–Appellant,

v.

**WISCONSIN DEPARTMENT OF CORRECTIONS and Michael J. Sullivan, Defendants–Appellees.**

No. 98–4012.

United States Court of Appeals, Seventh Circuit.

Submitted June 8, 1999.

Decided June 24, 1999.

Eduardo M. Perez (submitted), Oshkosh Correctional Institution, Oshkosh, WI, Pro Se.

James E. Doyle, Office of the Attorney General, Wisconsin Dept. of Justice, Madison, WI, for Defendants–Appellees.

Before BAUER, EASTERBROOK, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

After he slipped and fell in a prison shower, Eduardo Perez complained of back pain. Treatment for his condition was complicated because, although his sentence was imposed by Wisconsin, he was being confined by Texas under an agreement between the states. Significant medical expenses could be incurred only with Wisconsin's approval. A physician in Texas diagnosed "a large extruded disc

fragment" and recommended surgery; Wisconsin preferred the more conservative approach of exercise, physical therapy, and basic pain control medicine such as Ibuprofen. Now back in Wisconsin's prisons, Perez filed this suit under 42 U.S.C. § 1983, seeking damages for what he describes as cruel and unusual punishment. The district court observed that Perez has received medical treatment and held that his disagreement with the therapy provided does not entitle him to damages under the eighth amendment. See *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ Wisconsin asks us not to decide the merits of the case. Before filing suit, Perez did not obtain administrative review of his treatment. Section 1983 does not contain a comprehensive administrative-exhaustion requirement, but the Prison Litigation Reform Act has one for prisoners:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Given *McCarthy v. Bronson*, 500 U.S. 136, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991), complaints about medical treatment in prison are complaints about "prison conditions". Wisconsin offers administrative remedies for deficient medical care. Thus § 1997e(a) applies to Perez, and defendants promptly moved to dismiss the complaint because Perez had not exhausted his administrative remedies. Eight months went by without any ruling on this motion; then the judge granted summary judgment. The final paragraph of the court's opinion has this to say about § 1997e(a):

> Finally, although the Magistrate Judge determined that Perez failed to exhaust his administrative remedies before bringing this action, in violation of 42 U.S.C. § 1997e(a), he has exhausted his

administrative remedies in the meantime. Therefore, a dismissal without prejudice at this point would require Perez to file another claim, which would run counter to the policy of judicial economy. However, the issue is moot in light of the Court's ruling on the merits.

■ The judge did not explain how a request to dismiss the complaint—a request that, if granted, would end the litigation without prejudice—could be rendered moot by a decision on the merits. There is a big difference between dismissals with and without prejudice. Application of a law designed to prevent decision on the merits cannot be avoided by *making* the very decision whose propriety is contested, then declaring the decision-avoidance statute "moot." Cf. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

Although defendants prevailed in the district court, we might view the merits otherwise, and to avoid that risk defendants might prefer a dismissal without prejudice, as their appellate brief says that they do. Because reversal is a possibility, defendants can be aggrieved even by a decision in their favor, and we therefore must decide whether they are entitled to the relief they prefer: dismissal of the complaint. Examining the merits first and then ordering a case dismissed on exhaustion grounds only if the plaintiff is apt to prevail not only would disregard the statutory approach, which puts administrative ahead of judicial inquiry, but also would border on (if it would not transgress) the rule against issuing advisory opinions.

Section 1997e(a) does not say that exhaustion of administrative remedies is required before a case may be decided. It says, rather, that *"[n]o action shall be brought* with respect to prison conditions ... *until* such administrative remedies as are available are exhausted." Perez violated § 1997e(a) by filing his action. Congress could have written a statute making exhaustion a precondition to judgment, but

it did not. The actual statute makes exhaustion a precondition to *suit*. Section 1997e(a) is similar in both structure and function to other statutes that take the form "no suit unless ...". For example, the Federal Tort Claims Act provides that "[a]n action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing" or six months have passed without decision. 28 U.S.C. § 2675(a). The Resource Conservation and Recovery Act of 1976 provides: "No action may be commenced ... prior to 60 days after the plaintiff has given notice of the violation" to various persons. 42 U.S.C. § 6972(b)(1). When plaintiffs jumped the gun by filing suit before giving notice or making an administrative claim, several courts nonetheless proceeded to decision, reasoning that it would waste judicial resources to make the plaintiff start over. But the Supreme Court saw things otherwise, holding that language such as "no action may be commenced" means "no action may be *commenced*," not "no action may be *prosecuted*." Likewise "no action shall be *brought*", the opening language of § 1997e(a), cannot mean "no action shall be decided on the merits."

■ *Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), is the RCRA case, and *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993), the FTCA case. *Hallstrom* observes that negotiation may be more effective if a lawsuit is not on file; that observation is no less true of the PLRA than of the RCRA and the FTCA. Indeed, the utility and scope of litigation may depend on the outcome of the administrative process; if the prison accommodates all of the prisoner's requests, no suit will be filed, and even partial success in the administrative process may reduce the dispute to one that can be resolved amicably, or in which damages will be small. But arguments for and against exhaustion do not matter in the end. Judges are not the ones to make the decision; the political branches have made it. Both *Hallstrom* and *McNeil* conclude that statutes forbidding the commencement of a suit are too clear to tolerate revisionism in the name of efficient litigation management. Cf. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). Thus we agree with *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir.1998), and *Brown v. Toombs*, 139 F.3d 1102 (6th Cir.1998), that a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.

■ This is not at all to say that § 1997e(a) affects the subject-matter jurisdiction of the federal courts. Failure to exhaust administrative remedies does not deprive a court of jurisdiction. See *Air Courier Conference v. Postal Workers Union*, 498 U.S. 517, 522–23 & n. 3, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991). The fifth circuit, in *Underwood v. Wilson*, 151 F.3d 292 (5th Cir.1998), inquired whether § 1997e(a) is "jurisdictional" and, after answering no, concluded that the district court may elect to disregard it. This is the wrong question to ask—or at least the answer "not jurisdictional" does not imply "may be disregarded." The fifth circuit relied on cases such as *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), and *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), which hold that the time limits for making claims of employment discrimination are not jurisdictional. If waiting too long to sue is not a jurisdictional defect, the fifth circuit inquired, why should suing too soon be a jurisdictional problem? Well, it *can* be a jurisdictional shortcoming, if the step omitted before suit is essential to the existence of the claim, or to

536

ripeness, and therefore to the presence of an Article III case or controversy. See *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), which held that in light of 42 U.S.C. § 405(h) federal jurisdiction does not extend to a suit to secure social security benefits if the plaintiff has never filed an administrative claim. But Perez was injured (if at all) by deficiencies in medical treatment; an administrative claim is not essential to a case or controversy, and 28 U.S.C. §§ 1331, 1343 supply subject-matter jurisdiction. Section 1997e(a) does not affect the jurisdiction established by those statutes. Filing suit before exhausting prison remedies therefore is not the sort of defect that judges must notice even if the defendant is happy to contest the suit on the merits.

■ But it does not follow from treating § 1997e(a) like a statute of limitations that courts may choose to ignore it. Judges can't ignore statutes of limitations, either. When there are multiple grounds for dismissing a suit (as opposed to deciding it on the merits), courts may select from among them. Cf. *Ruhrgas AG v. Marathon Oil Co.*, —— U.S. ——, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Thus a court might properly dismiss a suit such as this to the extent it seeks relief against the Wisconsin Department of Corrections by observing that § 1983 does not authorize litigation against states and their agencies. See *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). But the court must not proceed to render a substantive decision until it has first considered § 1997e(a). The statute gives prisons and their officials a valuable entitlement—the right *not* to face a decision on the merits—which courts must respect if a defendant chooses to invoke it. That's the point of *Hallstrom* and *McNeil*, neither of which the fifth circuit mentioned in *Underwood*. Congress did not authorize bypass along the lines of 28 U.S.C. § 2254(b)(2), which says that "[a]n application for a writ of habeas corpus may be denied on the merits, not-

withstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Courts should not act as if every exhaustion requirement had its own § 2254(b)(2). Section 1997e(a) has a very different structure, as a ban on the bringing of suit (a structure the exhaustion requirement in the law of collateral attacks never had, see *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987)), which fortifies the conclusion that judges must place enforcement of the statute over a concern for efficient docket management. Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations. When they assert their rights—as the defendants in this case did—then the judge must address the subject immediately. Otherwise the benefit is likely to be lost, as it was here, for administrative and judicial claims went forward simultaneously and at the end of the judicial proceeding the judge disdained § 1997e(a). The statute can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit.

■ Two additional arguments require consideration. One is Perez's insistence that exhaustion would be futile—which he backs up by observing that while the lawsuit was ongoing he sought, but did not obtain, a change in his medical regimen. Such an *ex post* view of "futility" would contradict the holdings of *Hallstrom* and *McNeil*, for in both of those cases it became clear while the suit was ongoing that nonjudicial relief would not be forthcoming. As for the possibility that administrative remedies could be declared futile *ex ante*, without ever being tried: what would be the point of asking judges to be seers? Then the simplicity of § 1997e(a) would be lost, and instead of requiring exhaustion of administrative remedies it would lead to guesswork about counterfactual situations. No one can *know* whether administrative requests will be futile; the only way to find out is to try. See *Greene v. Meese*,

875 F.2d 639, 641 (7th Cir.1989) (rejecting an argument for the creation of a "futility exception" to the common law administrative-exhaustion regime that applied to federal prisoners before the enactment of § 1997e). What's the harm in waiting to see how the administrative process turns out?

The version of § 1997e(a) that predated the PLRA permitted a court to "continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available." In 1996 Congress deleted the requirement that the administrative remedy be "plain, speedy, and effective", and when these words left the statute so did any warrant to inquire whether exhaustion would be unavailing. Thus we agree once again with the eleventh circuit in *Alexander*, 159 F.3d at 1325–27: There is no futility exception to § 1997e(a). (Notice, by the way, that the difference between the pre–1996 version of § 1997e(a), which allowed a judge to "continue" the suit, and the PLRA version, which makes exhaustion a precondition to suit, also supports our principal conclusion that a case filed before exhaustion has been accomplished must be dismissed.)

■ A second and related contention is that no administrative "remedies" are "available" because Perez wants only money damages, which Wisconsin's administrative process cannot provide. Let us suppose that Wisconsin never offers financial compensation to a prisoner (though we can't see any rule that prevents it, and cases such as *West v. Gibson,* —— U.S. ——, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999), show that some agencies, at least, award compensatory damages). Still, the statutory question is whether *any* "remedies" are "available"; § 1997e(a) does not require the prison to use the prisoner's *preferred* remedy. *Alexander* holds that a prisoner cannot avoid § 1997e(a) just by limiting his demand in court to money, see 159 F.3d at 1326–28, and on this issue too we agree with the eleventh circuit—though

several courts of appeals have gone the other way. See *Whitley v. Hunt,* 158 F.3d 882, 887 (5th Cir.1998); *Lunsford v. Jumao-As,* 155 F.3d 1178 (9th Cir.1998); *Garrett v. Hawk,* 127 F.3d 1263, 1267 (10th Cir.1997).

Courts that treat suits for money damages as unaffected by § 1997e(a) rely on *McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Until the PLRA, there was no statutory exhaustion requirement for federal prisoners' suits. Courts generally required exhaustion nonetheless, following the norm in administrative law. *McCarthy* held that exhaustion was unnecessary when the plaintiff sought only money damages, because the Bureau of Prisons did not award money in administrative proceedings. But the Court also pointedly remarked that its conclusion depended on the absence of a statutory exhaustion requirement for federal prisoners, even though § 1997e required exhaustion by some state prisoners. 503 U.S. at 149–50, 112 S.Ct. 1081. The PLRA altered the landscape. Exhaustion now is required for both state and federal prisoners, and the requirement that the administrative remedy be "plain, speedy, and effective" has been deleted.

Section 1997e would not be worth much if prisoners could evade it simply by asking for relief that the administrative process is unable to provide. An administrative claim may help to narrow a dispute or avoid the need for litigation. Administrative remedies can help even when the prisoner wants damages. Take Perez's claim. He believes that the medical care provided for his back problem is constitutionally inadequate. Wisconsin might decide, in response to an administrative request, to change his medical regimen; it might even decide to authorize the surgical intervention Perez tells us he prefers. Providing this relief could definitively establish that the prison has not deliberately neglected to treat Perez's serious medical needs. At a minimum surgical intervention now would terminate the accrual of further

**538**

damages, and thus affect the remedy in the litigation. Or evidence gathered in the administrative process might demonstrate that Perez is exaggerating the seriousness of his medical condition.

This is not the first time we have been asked to hold that by seeking only damages a plaintiff may avoid a statutory exhaustion requirement. A similar argument was made, and rejected, in *Charlie F. v. Skokie Board of Education*, 98 F.3d 989 (7th Cir.1996), which dealt with 20 U.S.C. § 1415(f), a part of the Individuals with Disabilities Education Act. There, as here, the plaintiff asserted that damages were not a form of relief "available" in the administrative forum. We replied that a school board's ability to provide services in kind—that is, to provide money's worth—meant that it was impossible to draw a bright line between damages and other relief. *Charlie F.* also observed, as we have already done in this opinion, that the outcome of the administrative process could affect the quantum of damages available in litigation, and that the administrative process therefore should precede the lawsuit. Nothing in the statutory texts calls for a different outcome under the PLRA, so we hold that pursuit of administrative remedies is necessary no matter what relief the plaintiff seeks.

It is possible to imagine cases in which the harm is done and no further administrative action could supply *any* "remedy." Perhaps *Lunsford* met that description. Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a "remedy," and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust. Perez, unlike Lunsford, alleges that his medical problems are ongoing and that his treatment remains deficient, so Wisconsin can provide him with some "remedy" whether or not its administrative process offers damages.

The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).