STATE of Wisconsin EX REL. Spriggie HENSLEY, Plaintiff-Appellant,

v.

Jeffrey P. ENDICOTT, and Wisconsin Department of Corrections, Defendants-Respondents-Petitioners.

Supreme Court

*No. 00–0076. Oral argument May 30, 2001.—Decided July 11, 2001.*

2001 WI 105

(Also reported in 629 N.W.2d 686.)

612

For the defendants-respondents-petitioners the cause was argued by *Michael D. Oeser*, assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the plaintiff-appellant there was a brief by *Beth Ermatinger Hanan* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, Milwaukee, and oral argument by *Beth E. Hanan*.

An amicus curiae brief was filed by *Michael P. May* and *Boardman, Suhr, Curry & Field LLP,* Madison, on behalf of the American Civil Liberties Union of Wisconsin Foundation.

¶ 1. JON P. WILCOX, J. This is a review of a published decision of the court of appeals, *State ex rel. Hensley v. Endicott*, 2000 WI App 189, 238 Wis. 2d 649, 618 N.W.2d 245, reversing an order of the Dane County Circuit Court, Steven D. Ebert, Judge. There are two issues. The first issue is whether there is a common law futility exception to the Prisoner Litigation Reform Act's (PLRA), codified at Wis. Stat. § 801.02(7)(b)(1997–98),[1] statutory exhaustion requirement. We find that the statute is clear on its face in requiring prisoners to exhaust their administrative remedies prior to bringing an action in circuit court. Accordingly, there is no common law futility exception to the PLRA. The second issue is whether the court of appeals' holding that Wis. Stat. § 227.40, a declaratory judgment statute, trumps the PLRA was contrary to rules of statutory construction. Because the PLRA is more specific and passed later in time than

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

§ 227.40, it should have been applied to require the prisoner to exhaust his administrative remedies.

¶ 2. Spriggie Hensley (Hensley), incarcerated in the Columbia Correctional Institution in Portage County, filed a complaint for declaratory judgment against the Department of Corrections (DOC) in Dane County Circuit Court challenging the validity of two administrative regulations on First Amendment and Equal Protection grounds. The first regulation prohibited prisoners from having pornographic materials while the second prohibited prisoners from having cassette tapes and tape players. The DOC responded with a motion to dismiss because Hensley failed to plead exhaustion of administrative remedies per the PLRA. Although the circuit court found that Hensley stated a claim, it concluded that he was required to exhaust his administrative remedies under the PLRA and therefore dismissed his complaint. Hensley appealed.

¶ 3. The court of appeals reversed the decision of the circuit court. In so doing, the court observed that Hensley claimed the rules "are unconstitutional; and that question is unsuited to resolution through an inmate complaint review process in a particular correctional institution." *Hensley*, 2000 WI App 189, ¶ 5. The court then found two cases "persuasive" on the issue of exhaustion, *Cravatt v. Thomas*, 399 F.Supp. 956 (W.D. Wis. 1975), and *Green v. Nelson*, 442 F. Supp. 1047 (D. Conn. 1977). *Hensley*, 2000 WI App 189, ¶¶ 6–7. Sharing the "sentiments" expressed in those cases, the court of appeals asserted "that to require Hensley to advance his constitutional challenges to the rules in question before his institution's complaint review committees and appeal personnel as a precondition to raising them

is unnecessary." *Id.* at ¶¶ 7–8. Instead, the court found that Wis. Stat. § 806.04, which sets forth the general rules governing declaratory relief, and Wis. Stat. § 227.40(1), which deals with contesting the validity of administrative rules through declaratory judgment proceedings, trumped the PLRA's exhaustion requirement. *Id.* at ¶ 3.

¶ 4. We subsequently accepted the DOC's petition for review.

II

¶ 5. Before reaching the first substantive issue, we must address Hensley's threshold assertion, urged at oral argument, that we should decline to review whether there is a common law futility exception to the PLRA because the underlying dispute in this case has been rendered moot by the implementation of an emergency administrative rule, temporarily supplanting the particular prison rules challenged by Hensley. Wis. Admin. Reg. No. 543 (Mar. 2001). Even though an issue may be moot, this court will nevertheless address that issue if: (1) the issue is of great public importance; (2) the situation occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) the issue is likely to arise again and a decision from the court would alleviate uncertainty; or (4) the issue will likely be repeated but evades appellate review because the appellate process cannot be completed or even undertaken in time to have a practical effect on the parties. *State v. Gray*, 225 Wis. 2d 39, 66, 590 N.W.2d 918 (1999). Here, the first issue is whether the PLRA applies to a broad class of constitutional challenges raised by prisoners. This issue is likely to arise again and a decision from this court will alleviate uncertainty

circuit courts may have on whether they should find that a particular prisoner has exhausted his or her administrative remedies as a precondition for a challenge to a condition of the facility in which he or she is confined. Thus, we will address this issue as presented and briefed by the parties. *Id.* For the sake of completeness, we will address the second related issue of whether Wis. Stat. § 227.40(1) trumps the PLRA on the requirement of exhaustion.

■

¶ 6. Hensley asserts that there is common law futility exception to the PLRA's exhaustion requirement. He therefore presents an issue of statutory construction. We review questions of statutory construction de novo. *State ex rel. Cramer v. Court of Appeals*, 2000 WI 86, ¶ 17, 236 Wis. 2d 473, 613 N.W.2d 591.

■

¶ 7. The analytical framework for Wisconsin courts when confronted with a dispute that necessarily entails resolution of a point of statutory construction is well-established law. When we are confronted with a case that presents an unresolved point of statutory construction, we engage in statutory interpretation to discern the legislative intent. *State v. Sprosty*, 227 Wis. 2d 316, 323–24, 595 N.W.2d 692 (1999). As we have previously commented, "[o]ur duty to fulfill legislative intent ensures that we uphold the separation of powers by not substituting judicial policy views for the views of the legislature." *Cramer*, 2000 WI 86 at ¶ 17.

■

¶ 8. In adhering to our adjudicative role, we employ our established analytical framework on a point of statutory construction, which avoids invading the province of the legislature. First, we look at the

plain language of the statute. *Id.* at ¶ 18. Where the language of the statute is clear, we do not look beyond the language of the statute to discern legislative intent. *Sprosty*, 227 Wis. 2d at 324. It is only upon a finding of ambiguity that a court turns to extrinsic materials in order to discern the legislative intent. *Cramer*, 2000 WI 86 at ¶ 18.

¶ 9. The PLRA, codified at Wis. Stat. § 801.02(7)(b), provides:

> No prisoner may commence a civil action or special proceeding, including a petition for a common law writ of certiorari, with respect to the prison or jail conditions in the facility in which he or she is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies that the department of corrections has promulgated by rule or, in the case of prisoners not in the custody of the department of corrections, that the sheriff, superintendent or other keeper of a jail or house of correction has reduced to writing and provided reasonable notice of to the prisoners.

The plain language of the PLRA here indicates the intent of the legislature. It encompasses all prisoners who challenge "conditions in the facility in which he or she is or has been incarcerated, imprisoned, or detained" through civil actions or special proceedings, as well as common law writs of certiorari. *Id.* No such proceeding can be commenced unless the prisoner "exhausted all available administrative remedies." *Id.* The plain language contains no exception regarding futility. It is not within our judicial function to insert the phrase "where they are not shown to be futile" after "administrative remedies" in the statute. Therefore, we conclude that the plain language of the PLRA requires

prisoners to exhaust all their administrative remedies prior to challenging a condition in their respective facilities through any civil actions or special proceedings, including common law writs of certiorari.

¶ 10. In interpreting Wisconsin's PLRA on the issue of exhaustion, we can take guidance from the United States Supreme Court's recent interpretation of the federal PLRA, upon which the Wisconsin PLRA is based, in *Booth v. Churner*, 121 S. Ct. 1819 (2001).[2] *See Cramer*, 2000 WI 86 at ¶ 38. In *Booth*, a state prisoner in Pennsylvania brought a 42 U.S.C. § 1983 action in federal court alleging violation of his Eighth Amendment right to be free from cruel and unusual

---

[2] The federal PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a)(2000). Thus, there is only a slight variation between the federal PLRA and the Wisconsin PLRA statutes. Hensley places great emphasis on the difference between the two statutes, arguing that it undercuts the persuasive force of *Booth v. Churner*, 121 S. Ct. 1819 (2001), as well as other federal decisions interpreting the federal PLRA. We disagree. Our purpose in interpreting a statute is to discern the intent of the legislature. *State v. Sprosty*, 227 Wis. 2d 316, 323, 595 N.W.2d 692 (1999). In a case decided just last year, we said that the federal PLRA was the model for the Wisconsin PLRA. *State ex rel. Cramer v. Court of Appeals*, 2000 WI 86, ¶ 38, 236 Wis. 2d 473, 613 N.W.2d 591. Hensley has presented no special justification that compels us to rescind that recent determination. Accordingly, we find the United State Supreme Court's recent decision in *Booth* persuasive on the issue before us: whether a prisoner needs to exhaust administrative remedies when challenging a condition in the facility where he or she has been incarcerated or detained.

punishment by corrections officers.[3] 121 S. Ct. at 1821. Booth, like Hensley, asserted that he was not required to exhaust his administrative remedies when the "prison's process simply cannot satisfy the inmate's sole demand, the odds of keeping the matter out of court are slim." *Id.* at 1823. Therefore, the Supreme Court focused on the phrase "administrative remedies. . .available" in the federal PLRA which is the same as "available administrative remedies" in Wisconsin's PLRA. *Id.* To resolve the issue raised by Booth, the Supreme Court looked to the context of this phrase and the statutory history of the federal PLRA. *Id.* at 1824. Both points are instructive in the present case regarding Wisconsin's PLRA.

¶ 11. On the first point, the context of the word "exhausted," the Supreme Court noted that "[w]hile the modifier 'available' requires the possibility of some relief for the action complained of. . ., the word 'exhausted' has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered." *Id.* We adopt the Supreme Court's interpretation of "exhausted" for the Wisconsin PLRA. The word "exhausted" in Wisconsin's

---

[3] Hensley attempts to distinguish *Booth* from the present case on the ground that he did not file a claim in federal court or under 42 U.S.C. § 1983, but rather filed under Wis. Stat. § 227.40(1), which allows a challenge to an administrative rule. We find Hensley's distinction lacking because the holding in *Booth* was not confined to the procedural posture of the specific fact pattern before the court; instead the *Booth* court discussed the meaning of the word "exhaustion" in the federal PLRA and resolved a split among the federal circuits on that issue. 121 S. Ct. 1819, 1824–25. The meaning of the word "exhaustion" in the Wisconsin PLRA is similarly at issue in the present case.

PLRA refers to the procedural means, not the specific relief Hensley requested.

█

¶ 12. On the second point, the statutory history of the federal PLRA, the Supreme Court observed an earlier version gave a court discretion "to require a state inmate to exhaust 'such. . .remedies as are available,' but only if those remedies were 'plain, speedy, and effective.' 42 U.S.C. § 1997e(a)(1994 ed.)." *Id.* However, Congress eliminated the phrase referring to "plain, speedy, and effective" remedies. *Id.* at 1825. In light of this deletion by Congress, the Supreme Court asserted that "we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."[4] *Id.* at 1825. In contrast, the Wisconsin PLRA never had any such contingent phrase. Because Wisconsin's PLRA does not contain any contingent language regarding exhaustion, it follows that the PLRA eliminated any common law futility exception in the context of prisoner litigation that may have existed prior to its passage and mandated exhaustion regardless of the relief sought by the prisoner.

█

¶ 13. But the court of appeals found a futility exception to the exhaustion requirement in Wisconsin's PLRA as asserted by Hensley. Although neither the court of appeals nor Hensley highlight any ambiguity within the statute that enables them to reach

---

[4] As noted previously, the Supreme Court also explained that it had granted certiorari to address conflict among the federal circuits on the issue of exhaustion, and in the process, overruled *Whitley v. Hunt*, 158 F.3d 882 (5th Cir. 1998) and *Garrett v. Hawk*, 127 F.3d 1263 (10th Cir. 1997), which are relied on by Hensley. *Booth v. Churner*, 121 S.Ct. at 1822.

beyond its plain language for extrinsic evidence, both cite *State ex. rel. Smith v. McCaughtry*, 222 Wis. 2d 68, 72, 586 N.W.2d 63 (Ct. App. 1998), as authority for a futility exception to the exhaustion requirement in the PLRA. In *Smith*, the court of appeals stated that "[f]ailure to plead exhaustion of remedies, where they are not shown to be futile, is fatal to a complaint." *Id.* In support, the *Smith* court cited *State ex. rel. Braun v. Krenke*, 146 Wis. 2d 31, 39, 429 N.W.2d 114 (Ct. App. 1988). *Braun*, however, was decided prior to the passage of both Wisconsin's PLRA and the federal PLRA. *See Cramer*, 2000 WI 86, ¶ 38 (recounting the history and passage of the PLRA). It did not confront the plain unambiguous language present in the PLRA. It follows, then, that this sentence in *Smith* regarding exhaustion of remedies does not create a futility exception to the exhaustion requirement because it relied on *Braun*, which was superseded by the legislature's subsequent passage of the PLRA. To the same vein, the court of appeals' reliance on *Cravatt*, 399 F. Supp. 956, and *Green*, 442 F. Supp. 1047, is misplaced—both cases were decided prior to the passage of Wisconsin's PLRA and therefore did not confront the plain unambiguous language at bar in the PLRA.

¶ 14. Hensley, however, argues that the PLRA is inapplicable here because it applies to the conditions of confinement in a particular institution. In contrast, he contends, his challenge is statewide and constitutionally based. And "[n]othing in the language of the statute or the pertinent administrative code provisions expressly requires exhaustion when the scope of the challenge is state-wide, and constitutionally based." To be sure, the DOC administrative rules Hensley challenged applied to all correctional facilities under the

ambit of the DOC, not just the Columbia Correctional Institution. Nevertheless, Hensley's argument makes a distinction without a difference. The PLRA refers to challenges made "with respect to the prison or jail conditions in the facility in which he or she has been incarcerated, imprisoned or detained." Wis. Stat. § 801.02(7)(b). The plain language of the PLRA, then, does not make the distinction that Hensley presses.[5] That is, so long as the conditions at issue relate to the institution in which the prisoner is incarcerated, the PLRA applies. It is irrelevant whether those conditions relate to other institutions as well.

¶ 15. Finally, Hensley contends that only the courts, not the DOC administrative staff, have the power to declare the rules and procedures unconstitutional. According to Hensley, the alleged inability of the DOC to declare its own rules and procedures

---

[5] Hensley attempts to buttress his argument on this point by comparing the PLRA with Wis. Stat. § 801.02(7) (1995–96). Hensley notes that in creating the PLRA in 1997, the legislature changed the exhaustion requirement from applying to actions involving DOC personnel to actions involving "the prison or jail conditions in the facility in which he or she is or has been incarcerated." Wis. Stat. § 801.02(7)(b)(1997–98). Nevertheless, Hensley's argument is unpersuasive for two reasons. First, as we observed in *Cramer*, the PLRA as passed in 1997 was directed at curtailing "frivolous prisoner lawsuits related to prison or jail conditions." 2000 WI 86, ¶ 38 (citing the fiscal estimate LRB 4463/1, 1997 AB 688). Thus, the PLRA is substantively different than Wis. Stat. § 801.02(7) (1995–96), not just a later variation of that statute. Second, the fact that the legislature intended to ground challenges to a specific institution does not imply that the regulation being challenged has to be unique to that institution. As noted above, there is no evidence in the plain language of the statute of such legislative intent.

unconstitutional renders the exhaustion requirement superfluous. As previously discussed, we reject this argument in light of the Supreme Court's interpretation of "exhausted" in the substantially similar federal PLRA statute.

██

¶ 16. Moreover, we find that Hensley's argument falls short because the exhaustion requirement does not prohibit prisoners from pursuing constitutional challenges against the DOC; instead, it creates a preliminary procedure that must be completed before a prisoner can mount such a challenge in circuit court. As the seventh circuit observed in interpreting the analogous federal PLRA, "[s]ection 1997e [the federal PLRA] would not be worth much if prisoners could evade it simply by asking for relief that the administrative process is unable to provide. An administrative claim may help to narrow a dispute or avoid the need for litigation." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999). Hensley would disrupt the sweeping simplicity of the PLRA in order to get into circuit court sooner. By introducing this exception to the exhaustion requirement into Wisconsin's PLRA, Hensley would subvert the legislature's intent and dramatically increase the number of prospective litigants as well as associated costs—which we have previously noted the PLRA was intended to reduce—in order to have his first go before a circuit court rather than a DOC administrator. *See Cramer*, 2000 WI 86, ¶ 39 (noting that the PLRA "illustrates that the legislature intended to address the costly problems caused by prisoner litigation more expansively than the federal law"). As Judge Easterbrook queried in *Perez*: "What's the harm in waiting to see how the administrative process turns out?" 182 F.3d at 537. On that same thread,

at oral argument, Justice Bablitch asked Hensley's counsel, "as a practical matter, why does Mr. Hensley want to avoid the administrative process?" Hensley's response was essentially that he wanted "to stop this deprivation before it got started." Thus, the crux of Hensley's argument, repeated throughout his brief and again at oral argument, is that the administrative process cannot grant him the relief he requested. *But see Booth*, 121 S.Ct. at 1823 (federal PLRA "requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands"). He believes that an administrative law judge, in contrast to a circuit court judge, would not have stopped the implementation of the regulations at issue. In short, he rests on his unsupported assumption that the administrative process would be futile. But Hensley cannot know, anymore than we can know, how the administrative process will turn out. His argument against the exhaustion requirement, then, is one sounding in policy rather than law. However, the legislature has already made that policy decision in passing the PLRA and it is the adjudicative role of the courts to apply the plain unambiguous language of the PLRA to the case at hand.

III

¶ 17. Turning to the second issue, which is whether the court of appeals' holding that Wis. Stat. § 227.40(1), a declaratory judgment statute, trumps the PLRA in this context was contrary to rules of statutory construction, we begin with the arguments of Hensley and the State. Hensley maintains that § 227.40(1) is more specific than the PLRA in "terms of the form of relief requested." Hensley further contends that the legislature was aware of this declaratory judg-

ment statute when it passed the PLRA in 1997 and would have made it expressly subject to the PLRA if that was its intention. Finally, Hensley argues that the canon requiring harmonization of conflicting statutes mandates that facial constitutional challenges to statewide rules are exempt from the exhaustion requirement.

¶ 18. The State counters that Wisconsin PLRA is more specific than the declaratory judgment statute and, therefore, under the rule of statutory construction that the more specific statute controls over the more general, is controlling. Furthermore, the State asserts that because the PLRA was enacted later than § 227.40(1), it should control. Finally, the State maintains that the PLRA and the declaratory judgment statute could be harmonized because the PLRA only adds an additional pleading requirement.

■■■■■■

¶ 19. It is well-settled "that where two conflicting statutes apply to the same subject, the more specific controls." *Jones v. State*, 226 Wis. 2d 565, 576, 594 N.W.2d 738 (1999). Importantly, "conflicts between different statutes, by implication or otherwise, are not favored and will not be held to exist if they may otherwise be reasonably construed." *Moran v. Quality Aluminum Casting Co.*, 34 Wis. 2d 542, 553, 150 N.W.2d 137 (1967). It therefore follows that the statutes in question "must be construed in a manner that serves each statute's purpose." *Jones*, 226 Wis. 2d at 576.

¶ 20. Hensley sought declaratory judgment on the validity of administrative rules; such actions are typically governed by Wis. Stat. § 806.04, which provides the general rules for declaratory relief, and Wis. Stat. § 227.40, which provides the procedures for con-

testing the validity of administrative rules. In particular, Hensley relies on § 227.40(1), which states that a declaratory judgment may be rendered "whether or not the plaintiff has first requested the agency to pass upon the validity of the rule." According to Hensley, a conflict exists between this language in § 227.40(1) and the PLRA, which mandates that a prisoner exhaust his or her administrative remedies prior to seeking relief in circuit court. Hensley argues that this language in § 227.40(1) trumps the exhaustion requirement in the PLRA. He asserts that the PLRA is not a more specific statute in terms of the form of the relief requested, and therefore, it should not control over § 227.40(1).

¶ 21. We reject Hensley's argument. The rule of statutory construction that a more specific statute controls over a more general statute is not measured by the relief requested, but by the subject matter in question. *See Sigma Tau Gamma Fraternity House v. City of Menomonie*, 93 Wis. 2d 392, 402, 288 N.W.2d 85 (1980). To be sure, there is a slight overlap between the PLRA and § 227.40(1) in that both relate to bringing causes of actions. However, the PLRA is more specific than § 227.40(1) in that it is targeted at challenges to "conditions in the facility" while § 227.40(1) broadly allows judicial review of any administrative "rule." The PLRA, then, is confined to prison conditions while § 227.40(1) encompasses all rules promulgated by all administrative agencies in Wisconsin. Therefore, the breadth of § 227.40(1) is much greater than the PLRA. That the PLRA trumps § 227.40(1) where challenges are made to a condition in the facility where a prisoner is incarcerated is bolstered by the fact that the PLRA

626

was passed later in time than § 227.40(1).[6] *See Martineau v. State Conservation Comm'n*, 46 Wis. 2d 443, 449, 175 N.W.2d 206 (1970) (ruling that a specific statute controls over a general statute is especially true when the specific statute is enacted after the general statute). Accordingly, where a prisoner challenges a condition in the facility in which he or she has been incarcerated, the PLRA controls.

## IV

¶ 22. In sum, we rule that pursuant to the plain text of the statute, there is no common law futility exception to Wisconsin's PLRA. Moreover, we find that the recently passed PLRA, which is specifically targeted at requiring prisoners to exhaust their administrative remedies before bringing an action to challenge a condition at the institutions where they are incarcerated or detained, controls over the much broader § 227.40(1), which in some cases allows an individual to obtain declaratory judgment on administrative rules regardless of whether he or she has exhausted all administrative remedies. Accordingly, we find that the PLRA requires Hensley to exhaust his administrative remedies before bringing an action in circuit court.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 23. ANN WALSH BRADLEY, J. *(dissenting)*. Spriggie Hensley sought to constitutionally challenge the facial validity of administrative rules. Apparently,

---

[6] The PLRA was first passed in 1997, while Wis. Stat. § 227.40(1) was passed in 1955. *See Cramer*, 2000 WI 86, ¶ 38; § 13, ch. 221, Laws of 1955; Wis. Stat. § 227.05 (1955).

his First Amendment challenge had merit. As the majority opinion explains, that constitutional challenge has been rendered moot by the implementation of an emergency administrative rule suspending the very rule challenged by Hensley.[1] This emergency suspension was the result of a class action lawsuit filed in federal court, challenging the same administrative rule on First Amendment grounds.[2]

¶ 24. Having asserted a meritorious constitutional challenge, this case now only involves the question of what procedural route a prisoner must take in a limited circumstance—when a prisoner raises a constitutional challenge to the facial validity of an administrative rule. I conclude that Wis. Stat. § 227.40(1) is controlling because it more specifically applies to a facial challenge to an administrative rule. Because of the interplay between the PLRA's exhaustion requirements and the Department of Corrections' (DOC) complaint procedure, a conclusion to the contrary would lead to an absurd result. Accordingly, I respectfully dissent.

¶ 25. This case involves the collision of two statutory provisions. On the one hand, the PLRA requires exhaustion of administrative remedies prior to bringing an action in circuit court regarding "prison or jail conditions." Wis. Stat. § 801.02(7)(b). On the other hand, Wis. Stat. § 227.40(1) states that "the *exclusive means* of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for Dane County." Wis. Stat. § 227.40(1) (emphasis added). Under that

---

[1] *See* Wis. Admin. Reg. No. 543, 4 (Mar. 2001).

[2] *See Aiello v. Litscher*, 104 F. Supp. 2d 1068 (W.D. Wis. 2000).

statute, exhaustion of administrative remedies is expressly *not* required. *Id.*

¶ 26. There is an inevitable overlap between these two statutes where a prisoner seeks to challenge the facial validity of a rule relating to prison or jail conditions, as in the case at hand. I agree with the majority that we are to determine which statute is more specific. However, I disagree with the majority as to which aspect of the statutes we are to examine to determine that specificity: the specificity in a prisoner's challenge to a condition of confinement under the PLRA or the specificity in a challenge to the facial validity of a rule under § 227.40(1).

¶ 27. The majority concludes that Wisconsin's PLRA trumps Wis. Stat. § 227.40(1) on the grounds that the PLRA is more specific because it is confined to challenges to prison conditions, whereas § 227.40(1) encompasses all rules promulgated by a Wisconsin administrative agency. While the majority correctly notes that Wis. Stat. § 227.40(1) broadly applies to any administrative agency's rules, it also fails to note that it quite specifically applies to a challenge to the facial validity of a rule. Likewise, while the majority accurately explains that the PLRA applies to any action by a prisoner relating to the conditions of confinement, it ignores that the PLRA quite generally applies to a broad array of challenges: facial challenges to administrative rules, challenges to the application of administrative rules, and challenges relating to conduct or action of DOC personnel, unrelated to administrative rules.

¶ 28. I believe that we should focus on the application of Wis. Stat. § 227.40(1) to facial challenges addressing the validity of a rule. Ultimately, in resolving the conflict between the PLRA and § 227.40(1) in

this case, we are asked to determine which procedure is to be employed in a specific type of challenge. As a result, I believe the nature of that challenge, rather than the substance of the challenge, should be determinative.

¶ 29. I am compelled in this conclusion because a conclusion to the contrary would lead to an absurd result. In interpreting and harmonizing statutes, we are to avoid an interpretation which would lead to an absurd result. *Peters v. Menard, Inc.*, 224 Wis. 2d 174, 189, 589 N.W.2d 395 (1999).

¶ 30. Wisconsin Admin. Code ch. DOC 310, which sets forth the inmate complaint procedure that the majority would have an inmate exhaust, requires the filing of a complaint within 14 days of "the occurrence giving rise to the complaint." Wis. Admin. Code § DOC 310.09(3) (Apr. 1998).[3] Presumably, where an inmate seeks to challenge an administrative rule on its face, rather than as applied, "the occurrence giving rise to the complaint" is the promulgation of the challenged rule. Thus, there is no administrative remedy—as a matter of right—to address a facial challenge to a DOC rule after the initial two weeks of the rule's existence. Such a limitation to a constitutional facial challenge is absurd.

¶ 31. As a result of the majority's decision, a prisoner has only two weeks from the date that the rule is enacted to file a complaint facially challenging the constitutionality of the rule. Such a time limit would require that notice of the enactment be given with relative lightning speed to the prisoners. Such speed is

---

[3] Wisconsin Admin. Code § DOC 310.09(3) also provides that an institution examiner "may accept a late complaint for good cause." Wis. Admin. Code § DOC 310.09(3) (Apr. 1998).

often inconsistent with the realities of prison administration.

¶ 32. Likewise, inconsistent with reality is the requirement that a prisoner challenge the facial validity of a rule within two weeks of its enactment even if a prisoner is not placed in the prison system until years after the enactment. As a result of the majority's decision, absent the good graces of the prison administration to allow for a late filing, there is no avenue, whatsoever, for a person imprisoned more than two weeks after the enactment of the rule to raise a constitutional challenge addressing the facial validity of a rule. This means that meritorious challenges to unconstitutional rules can be forever foreclosed if raised outside the two-week window of opportunity. I do not believe the legislature intended such an absurd result.

¶ 33. While the inmate complaint system is capable of addressing an "as applied" challenge to an administrative rule, to the extent that the DOC complaint procedure forecloses all facial challenges that a prisoner seeks to bring after the initial 14 days of the rule's existence, the system is wholly inadequate to address such a challenge. Because Wis. Stat. § 227.40(1) specifically applies to facial challenges to the validity of an administrative rule and because it does not require exhaustion and therefore does not suffer from the same infirmities as the procedure under the PLRA, I conclude that it should be controlling.

¶ 34. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.